OPINION OF THE COURT
D. Bruce Crew III, J.
Petitioner has brought a CPLR article 78 proceeding challenging two separate actions of respondents. The first relates to a Superintendent’s hearing at which petitioner states he was denied the right to call witnesses on his behalf. The second relates to the conditions of confinement petitioner was *881 subjected to in 1 of 3 security/observation rooms at the hospital unit of Elmira Correctional Facility on three separate occasions, October 23 until November 8, 1987, December 4 until December 5, 1987 and January 29 until February 12, 1988.
With regard to the first claim respondents aver that the Hearing Officer did in fact allow the petitioner an opportunity to call witnesses and allowed such to the extent then practical. Further, respondents contend that petitioner raised an issue of substantial evidence regarding the Superintendent’s hearing and that pursuant to CPLR 7804 (g) the entire matter should be transferred to the Appellate Division, Third Department.
Regarding transfer, the issues raised in reference to the Superintendent’s hearing are not restricted to a question of substantial evidence (Matter of Lahey v Kelly, 71 NY2d 135; Matter of Hop-Wah v Coughlin, 118 AD2d 275) but include issues that can be determined by this court as a matter of law (Matter of Mountain v City of Schenectady, 100 AD2d 718).
From a review of the transcript it is evident that petitioner requested witnesses which consisted of the 12 inmates that were in the hospital unit the evening of the altercation that led to the Superintendent’s hearing. To this request the Hearing Officer replied that he would interview only 1 or 2 witnesses on the petitioner’s behalf and that he needed the specific names and locations of the witnesses petitioner wished to call.
After petitioner named one individual as best he could the Hearing Officer went off the record to attempt to locate the witness. When back on the record, petitioner indicated that he was becoming ill.* The Hearing Officer attempted to call a nurse and then stated for the record that the witness, James Pringle, refused to testify and had signed a form which indicated that he did not know enough about the incident. In the same paragraph the Hearing Officer asked petitioner if he had any other witness, while stating that he thought the matter had been pretty well covered. The petitioner, who was asking for medication and indicated that his jaw was beginning to lock, asked for no further witnesses. The Hearing Officer then concluded the hearing and issued his disposition.
*882 7 NYCRR 254.5 (a) and (b) provide that an inmate at a Superintendent’s hearing may call witnesses on his behalf, with the limitations that such testimony must be relevant and does not jeopardize institutional safety or goals. If the Hearing Officer should determine that a witness would not be proper, then he/she is required to make a written statement setting forth the reasons for such refusal.
In the case before us, there is no indication, in respondents’ answer or on the record, that the Hearing Officer gave petitioner reasons either in written or oral form, or that reasons, such as irrelevancy or danger to institutional safety or goals, existed, for limiting the witnesses to 1 or 2. Such failure violates 7 NYCRR 254.5 (a), (b) (Garcia v LeFevre, 64 NY2d 1001; Matter of Hill v LeFevre, 124 AD2d 383; Matter of Burke v Coughlin, 97 AD2d 862; Matter of Crippen v Coughlin, 109 AD2d 951). Further, the Hearing Officer was deficient as to 7 NYCRR 254.5 in not giving any indication that the attempt to determine why the witness, who was in the bed adjacent to petitioner during the altercation, would not testify to an incident that was said to have caused a disturbance in the hospital unit (Matter of Barnes v LeFevre, 69 NY2d 649). The subsequent waiver of petitioner to the calling of further witnesses was to no effect considering that he had already been told that he could only call 1 or 2 witnesses, that his one called witness would not testify and that he was becoming violently ill just before making such statement. The Hearing Officer was thus in violation of Department of Correctional Services (DOCS) rules in regard to the Superintendent’s hearing. Considering that petitioner has already served much of his disposition under severe conditions, all reference to the defective Superintendent’s hearing shall be expunged.
Respondents answered the second claim by admitting that in regard to the conditions of petitioner’s confinement in 1 of 3 security/observation rooms on the three separate occasions, they did not give petitioner a bed, his wheelchair, braces, crutches and clothing except for pajamas. They deny, however, that the rooms in question were ever designated as special housing units and thus are not in violation of 7 NYCRR parts 301 and 302. They further contend that if there are any violations of DOCS regulations to be found, they do not violate petitioner’s constitutional rights under the Eighth Amendment.
The petitioner argues that the security / observation rooms were, in effect, used for the purposes designated for special *883 housing units under 7 NYCRR 300.3 and thus must meet the minimum standards established for such units. 7 NYCRR 302.1 (a) provides that "Special housing units may be established and maintained for the purposes specified in section 300.3”. The regulations do not mandate that rooms used for the purposes outlined in section 300.3 be designated special housing. The argument of petitioner therefore may be defective on the issue of violating 7 NYCRR parts 301 and 302, but it is clear that if the rooms are not designated as special housing units then they must at the very least be considered a cell. 7 NYCRR 300.3 (d), (e) provide that the correctional facility shall not place inmates in a cell under degrading conditions or those which would be injurious to one’s health. To place a 52-year-old man, who has numerous health problems and requires a wheelchair for mobility, in a cell for over 17 days without a bed, with only pajamas for clothes and absent any means of mobility is clearly injurious to petitioner’s health, degrading and repugnant. Petitioner further complained that the conditions were even worse than respondents admitted, including filth and vermin, lack of toiletries, no sheets or pillow, and the absence of toilet paper which needed to be requested when necessary.
This court finds that respondents violated 7 NYCRR 300.3 (d), (e) by placing petitioner in a degrading and injurious cell, to wit, the three security/observation rooms in the hospital unit at Elmira Correctional Facility, and are enjoined from using such cells for confinement purposes until they meet DOCS regulations. Petitioner’s request that this court decide whether or not the conditions of confinement violated the Eighth Amendment of the US Constitution does not need to be reached. The remedies requested regarding a finding that an Eighth Amendment violation had occurred are the same as those already awarded upon the finding that the respondents violated 7 NYCRR 300.3 (d), (e).

 Petitioner has a medical history of suffering from a spinal cord injury, renal failure, a seizure disorder and receives dialysis treatment three times a week.