Elizabeth POWELL, et al., Plaintiffs,

v.

Benjamin WARD, et al., Defendants.

No. 74 Civ. 4628(CES).

United States District Court,
S.D. New York.

April 12, 1983.

Elizabeth L. Koob, Bronx Legal Services Corp. C, New York City, for plaintiffs.

Susan Yarborough, Asst. Atty. Gen., State of N.Y., New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

On January 10, 1983, Special Master Linda R. Singer submitted her Fourth Report on defendants' compliance with the court's orders concerning disciplinary proceedings at the Bedford Hills Correctional Facility. We now consider the responses and objections to this report we have received from both plaintiffs and defendants in this case.

*Witnesses*

Our 1975 Order, affirmed as modified in *Powell v. Ward,* 542 F.2d 101 (2d Cir.1976) ("the 1975 Order") provided:

1. Form PC–6 is a form developed by defendants for reporting reasons for denial of a wit-

An inmate shall be permitted to call witnesses on her behalf provided that so doing does not jeopardize institutional safety or correctional goals. The written notice of the charge ... shall inform the inmate of her right to call witnesses. The witnesses called shall be allowed to testify at the hearing in the presence of the inmate unless the hearing officer determines that this will jeopardize institutional safety or correctional goals. If an inmate is not permitted to have witnesses present, the witness may be interviewed out of the presence of the inmate and such interview recorded. The record of the witnesses' statement is to be made available to the inmate at the hearing unless the hearing officer determines that so doing would jeopardize institutional safety or correctional goals. Whenever a witness is refused an inmate or the record of a witness' statement is refused an inmate, a written explanation of such denials must be furnished to the inmate. If an inmate requests a number of witnesses, and the hearing officer determines that some of these witnesses are cumulative, those witnesses may be excluded on that ground.

In her Fourth Report, the Special Master found that the defendants' disciplinary system "lacks a mechanism for ensuring that inmates receive adequate reasons for denial of witnesses." Fourth Report at 32. The defendants object to this finding. The Special Master's conclusion was based upon her findings that:

1. in one of the two cases in which a hearing officer refused to call a witness requested by an inmate, the hearing officer stated only that the witness "could offer no testimony relevant to the charges";

2. in the one case in which a witness' testimony was heard outside the presence of the inmate, the Form PC–6[1] that ac-

ness or presence during a witness' testimony.

**276**

companied the hearing report explained only that this was "due to the fact that [the testimony] could possibly jeopardize the well-being of the other inmates"; and 3. in another case, the hearing report indicated that two hearing officers had been requested to testify, but did not because they were "not available". The report did not indicate, however, whether the officers had been requested by the inmate or the hearing officer and did not attach a Form PC–6 (as would have been required by the defendants' regulations had the inmate made the request).

Fourth Report at 6–8.

As to the first point, the Special Master notes that irrelevancy is not among the reasons permitted by the Order for refusing to call a witness. The defendants argue, however, that "correctional goals are compromised when inmates feel at liberty to demand—and obtain—testimony of persons who have no connection with a pending disciplinary case". Defendants' Response and Objections to the Fourth Report of the Special Master ("Defendants' Response") at 3. We agree with the defendants that the calling of witnesses who can offer no relevant testimony may be contrary to correctional goals. We believe, however, that the better practice—particularly during this period in which defendants have the burden of establishing their compliance with the 1975 Order—would be for hearing officers to include in their denials of witnesses requested by inmates a statement of the facts upon which they base their conclusion of irrelevancy. This statement should include a summary of the inmate's offer of proof, and the reasons the offer is rejected. With this information, the inmate, the Special Master and this court will be able to verify that the reason the witness has been denied is valid under the 1975 Order.

As the Special Master deemed the explanation given in the second case "barely adequate", the defendants made no argument in response. With regard to the third case, the defendants state "assuming *arguendo* that the two correction officers ... were in fact called as witnesses by the

inmate, ... the failure to attach the PC–6 form [was not] of such magnitude to warrant the conclusion that the mechanism of providing adequate explanations for denial of witnesses is deficient". Defendants' Response at 3. Normally, of course, a single error of this nature out of the total of almost 700 hearings conducted would not be a cause for concern. However, to evaluate the effectiveness of defendants' system, we must view this error not only in the context of total hearings conducted, but also in the context of the number of hearings in which use of defendants PC–6 form was appropriate (i.e., 3). One error in three cases is of some significance. The small number of cases involved does not permit a determination as to whether the defendants' system is ultimately effective or deficient. Given that defendants have experienced some problems in those small number of cases, however, we approve the Special Master's conclusion that further monitoring in this area is appropriate.

The plaintiffs object to two findings by the Special Master in the area of witnesses: her finding that it is proper to deny an inmate's request for a facility employee witness due to that witness' vacation schedule, and the finding that the explanation given L. Burns on her Form PC–6 for denial of access to testimony was sufficient. The Fourth Report does not indicate what efforts, if any, the defendants made to obtain the testimony of the vacationing witness nor what effects extra efforts might have upon the institution. We thus order the Special Master to make further findings in this area so as to allow a determination of whether denial of testimony because a witness is on vacation is consistent with correctional goals or not. As for the explanation given L. Burns for the taking of testimony outside her presence (viz., "due to the fact it could possibly jeopardize the well-being of other inmates"), we agree with the Special Master that this was adequate, although more specific information on the individual case is certainly desirable.

*Spanish Speaking Inmates*

■ The 1975 Order provides:

Spanish speaking inmates who cannot read and understand English must be given notice of charges and statements of evidence relied upon and reasons for actions taken in Spanish and provided with a translator who should be present at the hearing.

The defendants object to the Special Master's conclusion that this is another area in which defendants continue to demonstrate problems. While it is true that defendants during this monitoring period have developed a new system for identifying Spanish-speaking inmates, have translated into Spanish the "Statement of Evidence Relied Upon" section of the hearing form, and have promulgated a new regulation on translator/assistants, it is also true that four Spanish-speaking inmates did not receive translations during this period, and that these new approaches are still basically untested. We thus find further monitoring in this area appropriate, and we affirm the Special Master's findings and conclusions in this area.

*Written Statement of Evidence and Reasons*

The 1975 Order provided:

At the conclusion of the hearing, the inmate shall be given a written statement of the evidence relied on and the reasons for any action taken.

■ The defendants do not contest the Special Master's general conclusion that they continue to experience difficulties in this area. They do, however, contest her finding that the statement of reasons given in the Hidalgo case, *see* Fourth Report at 14

n. 19, was deficient.[2] We have examined the "Superintendent's Hearing Disposition Rendered" form from this case, and we find the statement of reasons adequate although far from exemplary.[3]

The defendants also disagree that they have experienced "particular problems" in producing adequate statements of evidence in loitering cases, noting that no hearings have been reversed for this reason in this area. The plaintiffs argue that these cases should have been reversed. We have reviewed the three loitering reports rendered during this monitoring period, and we find the statements of evidence adequate. Since the defendants do not contest the Special Master's findings that they had particular problems in writing statements of evidence in fighting cases, sex offense charges and non-detailed misbehavior reports, Fourth Report at 13, we need not disturb her conclusion that further monitoring in the area of statements of evidence is required.

*Impartial Hearing Officer*

The 1975 Order provides:

No person who has participated in any investigation of the acts complained of, or who was a witness to those acts shall be a member of any Adjustment Committee or Superintendent's Proceeding relating to those acts.

■ The Special Master found one proceeding in violation of this section. In that hearing (which involved an inmate who was one of three inmates involved in a fight) a hearing officer denied the inmate's request to call another inmate as a witness because the officer had heard the witness' testimony at her own hearing on the fighting charge. Fourth Report at 18. The defendants agree

2. The defendants do not contest the Special Master's statement that the Superintendent of the facility agreed that the Hidalgo hearing was defective and should be reversed. *See* Fourth Report at 13–14.

3. The hearing report contained the following statement of "Reasons for Disposition":

In my opinion, the inmate is not a disciplinary problem, but in the act of retaliation from being assaulted by inmate Gwen David, inadvertently kicked C.O. Boney in the back.

We assume that "in the act of retaliation" means action taken after David's assault and not self-defense. Thus, assuming that Hidalgo intended to harm David, this intent would be sufficient to support a charge of assault through a theory of "transferred intent." *See, e.g.,* N.Y. Penal Law § 120.00 (McKinney 1975); W. LaFave & A. Scott, Criminal Law § 35 at 252 (1972). We stress again, however, that a clearer statement of the facts is certainly desirable in cases such as this.

that the conduct of the hearing officer was "inappropriate to the extent it resulted in the denial of a witness". Defendants Response at 5. They deny, however, that any "case of partiality is made out against the Deputy Superintendent". *Id.* Inasmuch as the defendants have agreed to reverse the hearing, Fourth Report at 19, and the Special Master has found the defendants in compliance in the area of Impartial Hearing Officers, we need not make any specific ruling on this point. We do not believe that it is impossible for one hearing officer to conduct hearings for several inmates involved in a single incident. But, as the Special Master's assistant has advised, if after having conducted the first hearing, the hearing officer finds himself or herself unable to be impartial in a subsequent proceeding, a substitute officer must be sought. *See* Fourth Report, App. F at 2.

*Internal Monitoring*

In our February 27, 1980 Memorandum Decision, we stated that the Special Master should monitor compliance until "the due process protections required by our Order have been incorporated into the prison routine." *Powell v. Ward,* 487 F.Supp. 917, 935 (S.D.N.Y.1980), *aff'd as mod.,* 643 F.2d 924 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). In her Fourth Report, the Special Master finds that "internal monitoring has improved significantly". Fourth Report at 24. The defendants do not object to this conclusion, but do object to a statement by the Special Master which they report "characterizes the appeal process as 'not . . . particularly effective'". Unedited, the Special Master's statement reads: "The appeal process has not proved to be a particularly effective monitoring mechanism, although it has other purposes as well." *Id.* at 25. We see no error in this unedited statement.

*Conclusions and Recommendations*

■ While agreeing that the defendants' compliance has "substantially improved" during this monitoring period, plaintiffs object to the Special Master's finding of "substantial compliance" by defendants. They

further object to any "lessening of monitoring" by the Special Master. However, the Special Master did not make any general finding that the defendants were in "substantial compliance". She found the defendants were in compliance with those sections of the court's orders regarding: (1) Notice; (2) Impartial Hearing Officer; (3) Inmates Confined Pending Investigation; (4) Expungement; and (5) Stipulation and Order of March 31, 1981: Violation Hearings. Fourth Report at 31. As the plaintiffs have made no specific objections to any of these findings, we see no reason to disturb them. Our Memorandum Decision and Order of May 17, 1982 contemplated a "lessening of monitoring" in those areas in which the defendants demonstrate compliance. *See Powell v. Ward,* 540 F.Supp. 515, 518 (S.D.N.Y.1982). We thus approve the Special Master's recommendation that she continue to monitor only those areas in which problems were found.

Defendants object to the Special Master's statement that "[t]he success or failure of the disciplinary system at Bedford Hills apparently depends upon whether particular individuals conduct disciplinary hearings". Fourth Report at 32. Because the record before us does not reflect which officers conducted what hearings with what result, we are unable to rule on this point. If the defendants do desire a specific ruling on this point, we direct them to file this information with the court within twenty days of this decision.

■ Finally, plaintiffs object to the Special Master's failure to make findings on the damages suffered by those who received defective disciplinary proceedings during this monitoring period. As the issue of damages incurred from defective hearings received during the previous monitoring period is yet to be resolved, *see* Proposed Findings and Recommendations of the Special Master Concerning Awards of Damages dated January 14, 1983, we find it appropriate to defer consideration of damages from this period for the time being. Our rulings on damages from the Second and Third Reports of the Special Master will generally

clarify what types of claims are compensable and at what amounts. Deferring consideration of damages for the Fourth Period will thus hopefully narrow the issues and thus the paperwork for all concerned.

*Summary*

We order the Special Master to make further findings on the issue of denial of inmates' requests for witnesses because the witnesses are on vacation. We direct the defendants, if they desire a ruling on the point, to submit information on the relative effectiveness of their hearing officers within twenty days of this decision. Otherwise, for the reasons set forth in this decision, we approve the Fourth Report of the Special Master.

SO ORDERED.