■ In the Matter of EDWARD McCLEARY, Appellant, v EUGENE S. LeFEVRE, as Superintendent of the Clinton Correctional Facility, et al., Respondents. (Proceeding No. 1.) In the Matter of DAVID YOUNG, Appellant, v EUGENE S. LeFEVRE, as Superintendent of the Clinton Correctional Facility, et al., Respondents. (Proceeding No. 2.) — Appeals from two judgments of the Supreme Court at Special Term (Viscardi, J.), entered September 21, 1982 in Clinton County, which dismissed petitioners' applications, in proceedings pursuant to CPLR article 78, to annul determinations of the Superintendent of the Clinton Correctional Facility which found each petitioner guilty of violating disciplinary rules. Both petitioners Edward McCleary and David Young are inmates incarcerated at Clinton Correctional Facility in Dannemora. On March 22, 1982 at approximately 10:10 A.M., an incident occurred involving petitioners, three other inmates, approximately nine correction officers, a sergeant, and a lieutenant. As a result of this incident, a number of people, including petitioners, required medical treatment. A misbehavior report was filed against each petitioner on March 22, 1982. McCleary's misbehavior report stated: "Violation of rules 1.15 Assault, 1.25 disturbance, 1.90 refusing a direct order & 1.95 inciting a riot. At approx 10 10/a.m [*sic*] inmate McLeary [*sic*] refused to lock in upon completion of keeplock exercise. McLeary [*sic*] along with inmates: Valentine, Washington, Young, and St. Lawrence created a disturbance in the block and incited a riot by assaulting correction officers who were on the scene at the time. McLeary [*sic*] assaulted C.O.H. Martin." Young's misbehavior report stated: "The above mentioned inmate refused to

lock in after kl rec and caused a disturbance among the other inmates which resulted in inmates [*sic*] Young assaulting C.O. Brushnefski and other officers on the block. He is in violation of rules 1.90 refusing a direct order, 1.15 assault on an officer, 1.25 creating disturbance, 1.95 riot." An adjustment committee proceeding was held on March 23, 1982 to consider each petitioner's misbehavior report. The committee dismissed the assault charges against petitioners and ordered their continued segregation in the special housing unit pending superintendent's proceedings on the remaining charges. Correction Counselor Leary delivered a copy of the formal charges to each petitioner on March 24, 1982. The formal charges stated in relevant part: "CHARGE #1. 1.25 — Disturbance #2. 1.90 — Refusing to obey a direct order #3. 1.95 — Riot or inciting other to participate On March 22, 1982 at approx. 10:10 a.m. in Upper H Block you did refuse a direct order to lock in your cell after keeplock exercise. You then, in concert with four other inmates did participate in a riot situation which caused injury to several Correction Officers." Neither McCleary nor Young desired available assistance, requested that certain witnesses be interviewed, or sought further explanation of the charges. On March 27, 1982, separate superintendent's proceedings were held for each petitioner. Petitioners were each readvised of the pending charges and asked how they pleaded. McCleary pleaded not guilty to all three charges, and Young pleaded guilty to the second charge of refusing to obey a direct order and not guilty to the remaining two charges. At their superintendent's proceedings, petitioners relayed their version of what had transpired on March 22, 1982. Following their discussions with the hearing officer, petitioners were brought back to their cells while Correction Officer Jennett was interviewed. Jennett was the sole employee witness interviewed. Officer Jennett testified that as petitioners and the other inmates were being led from their keeplock exercise period back to their cells on March 22, 1982, at approximately 10:10 A.M., they stopped by the feed-up table and the inmates refused to walk any further, despite repeated orders that they lock in. Officer Jennett testified that petitioners and the other inmates instead demanded to see a lieutenant, and they claimed to be retaliating for having gone to keeplock exercises too early. Officer Jennett testified that Young refused Jennett's specific order that he lock in. In anticipation of difficulty, other correction officers, a sergeant, and a lieutenant were summoned. Lieutenant King arrived and specifically addressed inmate Valentine, who appeared to be the inmates' spokesman. Although Lieutenant King wanted to talk to Valentine individually, Officer Jennett testified that McCleary and the other inmates started to "shout very loudly", move around in an "agitated manner", and stated that they "weren't going no where" and were going to talk in a group. Officer Jennett testified that Lieutenant King then ordered all the inmates to lock up, at which point the inmates all "lunged" at the officers. Eventually, the inmates were subdued. Following Officer Jennett's interview in each proceeding, petitioners were brought back into the hearing room. Petitioners were again asked how they pleaded, and each responded as he had at the beginning of the hearing. Thereafter, each petitioner was informed that he was to be confined to four months in the special housing unit and incur nine months' loss of good time. Petitioners' superintendent's proceedings were affirmed by the departmental review board, and the instant proceedings were then commenced. In due course, Special Term dismissed petitioners' applications, without opinion, and the instant appeals ensued. Petitioners first argue that the notices of charges received by them did not satisfy the requirements of due process and 7 NYCRR 253.2 (b)* because the hearing officer allowed evidence of, considered, and

* We note that, effective June 15, 1983, the procedures for implementing standards of inmate behavior have been restructured (7 NYCRR parts 250-254).

relied upon the uncharged crime of assault in imposing punishment. In *Wolff v McDonnell* (418 US 539), the Supreme Court held that due process requires advance written notice of the claimed violation. Wolff provided the impetus for the enactment of 7 NYCRR 253.2 (b), which states, *inter alia,* that "[t]he formal charge shall consist of a written specification of the particulars of the incident of behavior involved and the date, time and place of such incident". A review of the record reveals that, contrary to petitioners' argument, fair and adequately detailed notice was given each petitioner with respect to the charges. Moreover, the record does not support petitioners' assertion that the hearing officer misunderstood the charges and, accordingly, went beyond the scope of the charges. The hearing officer did ask petitioners whether they had assaulted any officers. However, as petitioners were charged with participating in a riot situation *which caused injury to several correction officers,* the hearing officer was entitled to ascertain the degree of petitioners' participation in the subject disturbance regardless of whether the assault charges were dropped. Petitioners' next assertion is that the hearing officer failed to comply with the provisions of 7 NYCRR 253.4 (e). This regulation provides, in pertinent part, that after interviewing the inmate and other witnesses and considering reports of the incident and the adjustment committee records, the hearing officer: "shall then once again interview the inmate and shall advise him of the factual circumstances that appear to support the charge and shall afford him an opportunity to comment thereon and to make any statement he may care to submit with respect to the charge" (7 NYCRR 253.4 [e]). A review of the record reveals that in neither instance were petitioners advised of the factual circumstances supporting the charges against them. Rather, petitioners were only advised of the various sources relied on by the hearing officer in reaching his determination. This omission by the hearing officer is particularly troublesome since, although petitioners each had a copy of their misbehavior report and the formal charges, neither was aware of the substance of the correction officer's testimony inculpating them, nor, it would appear from the record, of the specifics of the March 22, 1982 incident as relayed in various departmental reports considered by the hearing officer. Although, as respondents assert, nothing in 7 NYCRR 253.4 requires that an inmate have disclosed to him all the evidence gathered, 7 NYCRR 253.4 (e) unequivocally requires that petitioners be informed of the facts supporting the charge. The records of the subject superintendent's proceedings fail to indicate meaningful compliance therewith. To hold otherwise would render the latter part of 7 NYCRR 253.4 (e), which requires that the inmate be afforded an opportunity to comment on the evidence, meaningless. The judgments should, accordingly, be reversed, the determinations annulled, and the matters remitted for new hearings (see *Matter of Batista v Kuhlmann,* 90 AD2d 934). Having reached this conclusion, we find it unnecessary to reach petitioners' remaining argument. Judgments reversed, on the law, without costs, determinations annulled, and matters remitted to the Department of Correctional Services for further proceedings not inconsistent herewith. Sweeney, J. P., Kane, Casey, Weiss and Levine, JJ., concur.