■ In the Matter of LUIS MERCADO, Petitioner, v WILLIAM

KIRK, as Superintendent of Wallkill Correctional Facility, et al., Respondents.—Mikoll, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Ulster County to annul a determination of a Superintendent's proceeding finding petitioner guilty of violating a prison disciplinary rule.

Petitioner, an inmate at Wallkill Correctional Facility, participated in February and May of 1984 in family reunion visits with his wife, Lidia, and his three daughters, Katherine, Rae and Louise. As a result of letters written by his wife and his daughter, Katherine, petitioner was served with a misbehavior report on January 18, 1985 charging him with violating inmate rule No. 101.10, which reads as follows: "Inmates shall not engage in, encourage, solicit or attempt to force others to engage in sexual acts." Petitioner was alleged to have sexually abused his 14-year-old daughter, Katherine (hereinafter daughter), during a family reunion trailer visit at the Wallkill facility on February 18 or 19, 1984, by fondling her breasts and attempting anal sodomy with her.

Petitioner was then placed in the special housing unit. On February 6, 1985, a Superintendent's hearing was held, during which petitioner denied the charge and claimed, in effect, that he believed his wife and daughter were making up the accusation in order to prevent him from being released on parole and complicating his wife's life. Petitioner requested that certain witnesses be called to testify who could establish his wife's and daughter's animosity toward him. These requests were denied by the hearing officer for various reasons. Petitioner was informed that his request to call his wife and his daughter was denied because "[t]he fear and anxiety caused by a face-to-face confrontation * * * would be very traumatic and serve no purpose". Requests by petitioner to call his sisters and sister-in-law as witnesses were also denied on the ground that they possessed "no first hand knowledge of the incident".

Respondent William Kirk, Superintendent of the facility, testified against petitioner. Kirk testified that the misbehavior report he wrote was a summary of the information he received while present at taped interviews of petitioner's wife and daughter with Senior Investigator James Barrie. Barrie testified that the only daughter he attempted to interview was Katherine. In addition, Barrie failed to investigate petitioner's claims that his wife and daughter were making up the charges to prevent his release on parole.

Although the incident was said to have happened on Febru-

ary 18, 1984, the letters alleging that the sexual abuse occurred were dated November 27 and 28, 1984. Petitioner therefore had requested that the hearing officer investigate his claims that his wife and daughter had made up the charges because his wife did not want him out on parole and disrupting her living arrangements with another man. However, the hearing officer never interviewed petitioner's wife or daughter, or anyone else present in the trailer on the date in question.

The charge against petitioner was affirmed by the hearing officer on February 8, 1985; petitioner was given a penalty of 60 days' confinement in the special housing unit, 60 days' loss of commissary and telephone privileges, and 24 months' loss of good time. Petitioner appealed this determination to the Review Board of the Department of Correctional Services. The hearing officer's determination was affirmed and this CPLR article 78 proceeding for judicial review ensued.

It was error in this case to deny petitioner's request to call his wife and daughter as witnesses at the hearing. Their testimony was certainly relevant and material (see, Matter of Coleman v Coombe, 65 NY2d 777, 780) since they were at the scene, wrote letters of complaint some nine months after the incident and allegedly harbored strong feelings of ill will toward petitioner for domestic reasons. Petitioner, through these and other requested witnesses, should have been allowed to develop evidence of alleged bias on the part of his daughter and wife in the circumstances presented here. The failure to do so was a violation of 7 NYCRR 254.5 (a). The reasons given by the hearing officer for refusing to call the requested witnesses were not sufficient (see, Matter of Coleman v Coombe, supra). Calling these witnesses would not have jeopardized institutional safety or correctional goals (see, 7 NYCRR 254.5 [a]).

Moreover, in view of the nature of the instant charge and the evidence of the existence of a motive to falsely accuse petitioner in order to keep him in prison longer, the hearing officer should have made an independent evaluation of the credibility and potential bias of petitioner's wife and daughter and not relied on the transcript of the interviews they had with Barrie. Here, the hearing officer improperly failed to consider the evidence of bias relevant to the issue of the credibility of petitioner's accusers (see, Matter of Cook v Coughlin, 97 AD2d 663, 664; Matter of De Mauro v LeFevre, 91 AD2d 1156, 1157). Accordingly, the determination should be annulled and the matter remitted to respondents for the purpose of conducting a new Superintendent's hearing. We

find it unnecessary to reach any other assignments of error raised by petitioner.

Determination annulled, without costs, and matter remitted to respondents for further proceedings not inconsistent herewith. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.