■ In the Matter of TYRONE HILL, Petitioner, v EUGENE S. LeFEVRE, as Superintendent of Clinton Correctional Facility, et al., Respondents.—Mikoll, J.

Petitioner, a prisoner at Clinton Correctional Facility, was charged in an inmate misbehavior report with assault stemming from an incident on August 22, 1985. He was alleged to have stabbed inmate Ali Abdullah in the north yard at approximately 3:10 P.M. The report indicated that an inmate named "Smiley", who worked in the mess hall, was identified as the assailant by a confidential source. Petitioner's nickname is Smiley. The report also disclosed that petitioner's picture had been picked out by the confidential source from an array of six photos selected to depict inmates with similar facial features.

An affidavit from Correction Officer Wayne states that he served the misbehavior report on petitioner and presented him' with an "Assistant Selection Form" which petitioner refused to sign. Emerson noted petitioner's refusal on the form and further stated that, to the best of his recollection, he had advised petitioner of his right to an employee assistant at that time. Petitioner denied the assault charge and asserted an alibi defense before the Hearing Officer, claiming that since he was ineligible for recreation privileges due to a prior disciplinary penalty and since the incident occurred at a location off limits to him, he could not have been in the yard and could not have been the assailant. The Hearing Officer adjourned the hearing and contacted mess hall personnel. The hearing then recommenced and petitioner was informed that someone from the mess hall said that the assault occurred at a time when petitioner or anyone else could have gone to the yard and returned unnoticed. At this point, the Hearing Officer adjourned to hear the testimony of the confidential source.

When the hearing resumed, petitioner was given a form stating that a confidential witness had testified and that

petitioner was not permitted to be present during the interview or to have access to the record of the testimony since the contact "could jeopardize the safety and security of this facility". Petitioner signed the form and the Hearing Officer advised him that the confidential source had again identified petitioner as the assailant.

Petitioner had requested three witnesses to be called on his behalf, inmates Payton Ransom, John Stenson and one Ballinger. Ransom and Stenson were in the mess hall with him on the day in question. Ballinger was presented when petitioner was informed of his "no rec" status. Petitioner also requested as a witness Correction Officer John La Vigne, who supervises in the mess hall.

Stenson testified that he was working with petitioner in the mess hall on August 22, 1985 and that petitioner had not left his presence the entire day. Ransom testified that he worked in the mess hall that day until 2:45 P.M., at which time he left petitioner with Stenson to go out to the yard. Ransom stated that prison procedure required all inmates to line up for the yard break. The inmates have to wait until they are called by the officer in charge who then escorts them out to the yard. Ransom also stated that if a prisoner misses a "go out", he cannot exit thereafter. Ballinger did not testify.

The hearing disclosed much confusion as to which officers were on duty in the mess hall on the day in question. Officer La Vigne first thought he was away on vacation but later said that he assumed he did not work that day because his squad was not on duty. Whether he made a change of assignment with another guard would appear in his personal appointment record. La Vigne never returned to testify further as to whether he was on duty. Neither Correction Officer Ken Waldron, who said he was there, nor La Vigne had any specific recollection of the day's events or whether petitioner was in the mess hall that day. Waldron opined that it would be possible for petitioner to go into the yard undetected even if he were on "no rec" time.

The Hearing Officer found that petitioner had committed the assault and imposed a penalty of one year keeplock in the Special Housing Unit and one year loss of good time and other privileges.

This is a troublesome case. On the one hand, we have the strong assertion by the victim of the crime that petitioner was the assailant. This is diluted somewhat by the fact that the accusation was not levied against petitioner for over a month

after the assault. The victim's identification occurred in the heat of a fight, with the perpetrator approaching the victim from the rear. The victim had not had a confrontation with petitioner and could not supply a motive for the assault. On the other side, we have the testimony of Stenson, who unequivocally stated that petitioner was with him throughout the day cooking chicken and never left the mess hall. Ransom also testified that when he left the mess hall at 2:45 P.M., petitioner was still there and that Ransom delivered onions for petitioner to another area of the prison.

The balance was tipped against petitioner by the Hearing Officer's acceptance of information given to him by mess hall personnel that it would have been possible for petitioner to sneak out undetected into the yard during the time of the assault despite his "no rec" status.

Petitioner's contention that the Hearing Officer's off-the-record inquiry of mess hall personnel was error and denied him due process is well taken. There was no record made of these interviews and this violates 7 NYCRR 254.5 (b), which states as follows: "Any witness shall be allowed to testify at the hearing in the presence of the inmate unless the hearing officer determines that so doing will jeopardize institutional safety or correctional goals. Where an inmate is not permitted to have a witness present, such witness may be interviewed out of the presence of the inmate and such interview tape recorded. The recording of the witness' statement is to be made available to the inmate at the hearing unless the hearing officer determines that so doing would jeoparize institutional safety or correctional goals." The error was somewhat mitigated by the subsequent testimony of Officer Waldron, who spoke of prison procedures, but the full extent of mitigation of the error is unascertainable on this record.

Of greater consequence to petitioner was the failure of the Hearing Officer to call the third witness requested by petitioner, inmate Ballinger, or to state the reason for the denial on the record. Ballinger was allegedly present in the mess hall when petitioner was denied access to the yard. We conclude that should Ballinger support petitioner's contention that he was not allowed to go into the yard, the testimony could indeed be crucial to the acceptance of this alibi defense *(see, Matter of Coleman v Coombe,* 65 NY2d 777). This, too, was a violation of prison regulation 7 NCRRR 254.5 (a), which reads as follows: "The inmate may call witnesses on his behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional

goals. If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented."

We find no merit in the other contentions raised by petitioner.

Determination annulled, without costs, and matter remitted to respondents for a new hearing. Kane, J. P., Main, Mikoll and Yesawich, Jr., JJ., concur.

Casey, J., dissents and votes to confirm in a memorandum. Casey, J. (dissenting). In my view, the procedural errors relied upon by the majority do not require that the determination be annulled. As to the Hearing Officer's off-the-record inquiry of mess hall personnel concerning prison procedure, subsequent testimony at the hearing on the same subject rendered the error inconsequential. As to the Hearing Officer's failure to interview one of the witnesses requested by petitioner, the record shows that petitioner wanted the witness to establish that petitioner was on "no rec" status, a fact which was readily aascertainable from other evidence in the record. By failing to raise the issue at the hearing, petitioner waived any error in the officer's failure to provide a written statement of reasons for refusing to interview the witness (see, Matter of Hop-Wah v Coughlin, 118 AD2d 275). Based upon the record as a whole, including the testimony of the confidential informant and other evidence consistent with that testimony, there is substantial evidence supporting the determination of guilt. Accordingly, the determination should be confirmed.