**Julio GIANO, Petitioner,**

v.

**James SULLIVAN, Superintendent, Sing Sing Correctional Facility, et al., Respondents.**

**No. 88 Civ. 6201(CES).**

United States District Court, S.D. New York.

Jan. 10, 1989.

On Motion to Alter or Amend March 13, 1989.

---

Julio Giano, Attica, N.Y., pro se.

Robert Abrams, Atty. Gen. of State of N.Y. by Charles G. Davis, Jr., Jay B. Damashek, New York City, for respondents.

## MEMORANDUM DECISION PRO SE

STEWART, District Judge:

In a disciplinary proceeding conducted at the Sing Sing Correctional Facility ("Sing Sing") on December 14, 1986, petitioner *pro se* Julio Giano was found guilty of escape from a prison facility, leaving an assigned area, and setting a fire. The penalty imposed was confinement in the Special Housing Unit ("SHU") for a period of five years, with no phone, packages, or commissary privileges during the entire period. Petitioner claims that his disciplinary hearing was conducted in violation of his constitutional due process rights, and seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ordering that he be released from SHU into the general prison population, and that all references to the disciplinary hearing be expunged from his record. For the reasons set forth below, the petition is granted.

## BACKGROUND AND PRIOR PROCEEDINGS

The following facts are undisputed. On December 10, 1986, an inmate misbehavior report was signed by a Lieutenant Wilkerson of Sing Sing, and was supplemented by

respondent James E. Sullivan, Sing Sing's Superintendent, on December 11, 1986. The report charges petitioner with three rule violations: (1) escape from the prison facility, (2) leaving an assigned area, and (3) setting a fire.

According to the report, petitioner and two other inmates, Darius Gittens and Thomas Linz, escaped from Sing Sing on December 9, 1986 by exiting from a second floor bathroom window, and by using incendiary devices to cause sparks, explosive sounds, and smoke as a diversion allowing them to cut through the fence surrounding the facility. As supplemented by respondent Sullivan, the misbehavior report further sets forth that petitioner was captured in North Tarrytown, New York the following day, and returned to Sing Sing on December 11, 1986.

Petitioner was placed in special confinement upon his return to the facility, and was shortly thereafter served with the misbehavior report. Petitioner requested an employee assistant to aid him in preparing his defense to the charges. Petitioner met with the assistant on Friday, December 12, 1986, and requested that the assistant seek to obtain certain documentary evidence, including, among other things, all reports submitted by corrections officers in the immediate area of the December 9, 1986 incident.

Petitioner's disciplinary hearing was commenced in the morning of Sunday, December 14, 1986. The hearing officer in petitioner's case, Brant Kehn, had conducted the disciplinary hearings of Gittens and Linz, the other two alleged escapees, during the three days prior to petitioner's hearing.[1] The petitioner was unaccompanied by the assigned assistant during his hearing, and repeatedly asserted his unreadiness to proceed.

Despite these protests, and despite petitioner's repeated requests for the documents that he had previously asked the assistant to obtain, the hearing officer proceeded with the hearing. Lieutenant Wilkerson, who was apparently present in the hearing room throughout the hearing, testified about the information he learned during his investigation of the December 9 incident, and which he recorded in petitioner's misbehavior report. Corrections Officer Harrison, also present throughout the hearing, testified about his observance of petitioner being escorted back to the Sing Sing facility on December 11, 1986. Petitioner called no witnesses at the hearing and presented no defense.

Fifteen minutes after the hearing began, petitioner was asked to leave the hearing room so that the hearing officer could write up the disposition of the case. Fifteen minutes later, the disposition was announced: the petitioner was found guilty of all three rule violations and was ordered confined in SHU for a period of five years, with no packages, telephone, or commissary privileges during that entire period of confinement. Petitioner thereafter appealed to the Commissioner of Corrections, who summarily affirmed the disciplinary hearing disposition on February 17, 1987. Appendix to Brief for Respondent–Appellant before the Appellate Division, Second Department, at A18 [hereinafter Appendix to Brief for Respondent–Appellant].

Petitioner then commenced an action pursuant to Article 78 of the New York Civil Practice Law and Rules, alleging that his disciplinary hearing was conducted in violation of his constitutional due process rights, and that the penalty imposed was excessive. By decision dated June 26, 1987, the New York State Supreme Court, Westchester County, held that petitioner was denied his right to submit relevant documentary evidence, but concluded that

---

1. The record provided to this court contains only Gittens' Hearing Disposition. Gittens was found guilty of escape, setting a fire, and possession of money, and was sentenced to two years in SHU, with no telephone, packages, or commissary privileges for one year. Appendix to Brief for Petitioner–Appellant before the Appellate Division, Second Department, at A3 [herein-

after Appendix to Brief for Petitioner–Appellant]. The record does not contain Linz's disposition. Petitioner contends that one of these two inmates had pleaded guilty to escape before hearing officer Kehn, but does not indicate which one. The record does not indicate whether or not either had pleaded guilty.

such error was applicable only to the charges of setting a fire and leaving an assigned area. *In re Giano v. Sullivan,* No. 3542/87, slip op. at 3–4 (N.Y.Sup.Ct., Westchester Co., June 26, 1987). The court sustained the escape charge. *Id.* at 4. The court further concluded, however, that petitioner's five year confinement to SHU was excessive, and reduced the penalty to one year. *Id.* at 4–5.

Petitioner appealed to the Appellate Division, Second Department, from that part of the judgment affirming the escape charge. Respondents cross-appealed from that part of the judgment dismissing the leaving-as-signed-area and fire charges, and from the reduction of petitioner's penalty. In a decision dated February 1, 1988, the Appellate Division reversed the State Supreme Court's dismissal of the leaving-assigned-area and fire charges, finding that petitioner was not prevented from submitting relevant documentary evidence and that those charges were supported by substantial evidence. *In re Giano v. Sullivan,* 137 A.D. 2d 529, 524 N.Y.S.2d 270 (2d Dept.1988). The Appellate Division also reinstated the original penalty of confinement to SHU and loss of privileges for a five-year period. 524 N.Y.S.2d at 272. Petitioner was denied leave to appeal to the New York Court of Appeals on July 12, 1988. *In re Giano v. Sullivan,* 72 N.Y.2d 804, 532 N.Y.S.2d 755, 528 N.E.2d 1228 (1988).

Alleging due process violations at his disciplinary hearing, petitioner now seeks a writ of habeas corpus to be released from SHU into the general prison population, and to expunge from his record any reference to the disciplinary hearing.

### DISCUSSION

We hold as an initial matter that a habeas petition is the appropriate vehicle through which to pursue the relief requested by petitioner. *See Boudin v. Thomas,* 732 F.2d 1107, 1111–12 (2d Cir.) (appropriate to treat complaint seeking transfer to general prison population as petition for writ of habeas corpus), *reh'g denied,* 737 F.2d 261, 262 (2d Cir.1984) (Newman, J., concurring) (habeas is appropriate remedy

for challenging lawfulness of restrictive confinement within prison custody); *see also Krist v. Ricketts,* 504 F.2d 887, 887–88 (5th Cir.1974) (per curiam) (habeas corpus available to persons who seek release from solitary confinement within context of general incarceration). We further find, and respondents do not dispute, that petitioner has exhausted his state remedies. 28 U.S.C. § 2254(b) and (c).

■ Petitioner alleges that his disciplinary hearing was conducted in violation of the Due Process Clause of the fourteenth amendment. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court recognized that prisoners retain a liberty interest, even within the context of incarceration, that may not be deprived without due process of law. 418 U.S. at 556, 94 S.Ct. at 2974. The Court held that an inmate facing disciplinary charges that could result in punitive segregation is entitled, at a minimum, to advance written notice of the charges against him and of the evidence available to the factfinder. *Id.* at 563–64, 94 S.Ct. at 2978–79. The purpose of this notice is to give the inmate an opportunity to marshal the facts and prepare his defense. *Id.* at 564, 94 S.Ct. at 2978. Moreover, a written record of the proceedings must be kept, with a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action. *Id.; see Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir. 1985). In addition, the inmate must be allowed to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566, 94 S.Ct. at 2980; *see McCann v. Coughlin,* 698 F.2d 112, 122 (2d Cir.1983).

Following *Wolff,* courts have elaborated on the minimum due process to which an inmate facing disciplinary charges is entitled. For example, the Second Circuit in *McCann v. Coughlin, supra,* recognized that the factfinder presiding over the disciplinary hearing must be fair and impartial. 698 F.2d at 122 (citing *Crooks v. Warne,* 516 F.2d 837 (2d Cir.1975)). And in *Eng v.*

*Coughlin,* 858 F.2d 889 (2d Cir.1988), the Second Circuit recently held that "prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." 858 F.2d at 897.

To codify inmates' recognized due process rights in connection with the prison disciplinary process, New York State has enacted a comprehensive set of regulations under the heading, "Procedures for Implementing Standards of Inmate Behavior," 7 NYCRR 250.1—254.9. Among the procedural rights codified in the regulations which are relevant to the instant case are the right to an assistant to interview witnesses and obtain documentary evidence on behalf of the inmate (7 NYCRR 251–4); the right to present documentary evidence and to call witnesses at the disciplinary hearing provided that the evidence or testimony is material and would not jeopardize institutional safety or correctional goals (7 NYCRR 254.5, 254.6); the right to written reasons from the hearing officer should a request for documentary evidence or witnesses be denied (*Id.*); and the right to an impartial hearing officer (7 NYCRR 253.1, 254.1).

### I. *Assistance in Preparing Defense*

■ Petitioner claims that his due process rights were violated in that he was prevented from preparing a defense to the charges against him. Specifically, he contends that he was denied his right to introduce relevant documentary evidence at his disciplinary hearing. We agree that petitioner was denied his right to prepare a defense to the very serious charges against him.

The record reveals that petitioner, who was placed in solitary confinement immediately upon his return to Sing Sing after his short-lived escape, requested the aid of a Spanish-speaking employee assistant. Appendix to Brief of Respondent–Appellant at A25. The requested assistant met with petitioner for the first and, apparently,

only time at approximately 4:00 p.m. on Friday, December 12, 1986. *Id.* At that meeting, petitioner requested no witnesses, but asked for, *inter alia,* "all reports submitted by C.O.'s [Corrections Officers] in the immediate area of the incident on 12/9/86." *Id.* at A30.[2] Petitioner contends that at the conclusion of the meeting, the assistant said that he had a "special event" to attend that evening and would not be able to pursue petitioner's document request until the following Monday, December 15, 1986. Respondents do not dispute this account. In any event, it is clear from the record that the assistant did not meet with petitioner again prior to the disciplinary hearing, which was held on Sunday morning, December 14, 1986, and did not accompany petitioner to that hearing. It is also clear that the documentary evidence petitioner asked the assistant to obtain for the hearing was never produced.

The disciplinary hearing transcript further reveals that petitioner repeatedly told Hearing Officer Kehn that he was not ready to proceed with the hearing. For instance, when asked how he wished to plead to the charges against him, petitioner responded:

Not guilty. I told you I am not prepared for this hearing. I have made a move to have all of my legal property returned and you haven't returned my legal property. I think I am entitled to, by law, I have requested reports of every officer involved in the incident at the scene, allegedly, and I have not been provided with that for this hearing. I am not ready for this hearing.

*Id.* at A36. During the course of the hearing, Officer Kehn acknowledged the existence of the reports sought by petitioner, but nevertheless ignored petitioner's requests to produce them:

B. Kehn— ... Uh—I don't have the reports with me ... the reports are under separate cover in the Superintendent's office ...

. . . . .

2. According to petitioner, this documentary evidence was important because the misbehavior report was signed and co-signed by prison officials who were not in the immediate vicinity of the violations and who had no direct knowledge of the circumstances surrounding the charges.

B. Kehn—If it becomes necessary, we will have to—we will produce statements by officers who realize you were the. . . .

In. G[iano]—Now that the hearing has commenced and I bring it to your attention that now you are going to investigate it further.

B. Kehn—The investigations have all been done. It's not appropriate or necessary, for me to give you all those reports at this hearing.

In. G[iano]—Which hearing would you like to give it to me at? After you now . . .

B. Kehn—Well, this is jumping the gun, but you obviously have an appeal process. Once this hearing is completed, then you have legal redress.

*Id.* at A36–37. Petitioner presented no defense to the disciplinary charges against him.

As noted above, the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1973), recognized that an inmate facing disciplinary charges must have an opportunity to marshal the facts and prepare a defense. *See also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985). In this connection, the Second Circuit recently held that prison authorities had a constitutional obligation to provide substantive assistance to an inmate in marshaling evidence and presenting a defense. *Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). Moreover, for inmates disabled by confinement in SHU, this assistance must be provided in good faith and in the best interests of the inmate. *Id.* at 898.

In *Eng,* the plaintiff, an inmate in custody of DOCS, was charged with several prison rule violations, including assault, making threats, and refusing a direct order. He was already in SHU as a result of previous rule violations, and requested an assistant to aid him in gathering evidence and interviewing witnesses with respect to the new charges. 858 F.2d at 891. An assistant was assigned but interviewed no witnesses and conducted no investigation. When the plaintiff reiterated his request for assistance at his disciplinary hearing, the hearing was adjourned in order for the

assistant and the hearing officer to perform certain inquiries. *Id.* at 892. While the parties disagreed about what actions the assistant and the hearing officer took in furtherance of the investigation or to assist the plaintiff, it was clear that by the time the hearing resumed several days later, a certain videotape had not been reviewed as requested by the plaintiff and certain requested documents had not been provided. *Id.* The plaintiff was found guilty of all the charged rule violations, and was sentenced to 360 days in SHU and 360 days loss of good time. *Id.*

The plaintiff brought an action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York against the prison superintendent, the disciplinary hearing officer, and the assigned employee assistant, alleging due process violations. On an interlocutory appeal from several rulings by the district court, the Court of Appeals for the Second Circuit remanded the denial of the superintendent's and hearing officer's motions for summary judgment to the district court for it to rule on these defendants' claims of qualified immunity. *Id.* at 895. The court affirmed the grant of summary judgment in favor of the assistant, finding that the assistant's omissions did not then constitute a violation of the plaintiff's "clearly established" rights, and that the assistant could therefore properly invoke the defense of qualified immunity. *Id.* at 897.

However, the *Eng* court proceeded to describe, for purposes of all future cases, the constitutional obligation of prison authorities to provide assistance to inmates facing disciplinary charges. Having found that such a constitutional obligation existed, the court observed:

When the inmate is disabled, either by being confined full-time to SHU or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced. *If the inmate's right to marshal evidence and present a defense is to mean anything, then an inmate so disabled must be provided*

*with some assistance.* Although this is not the occasion to define the assigned assistant's precise role and the contours of the assistant's obligations, such help certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses. At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself. *Id.* at 897–88 (citations omitted) (emphasis added). The court concluded that "for inmates disabled by confinement in SHU, ... the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment". *Id.* at 898.

In the present case, as in *Eng,* petitioner was in special confinement when he requested and was assigned an employee assistant. Also as in *Eng,* the assigned assistant was either unwilling or unable to perform the specific tasks requested by petitioner in preparation for petitioner's disciplinary hearing. Indeed, the assistant did not provide any assistance whatsoever. Despite several protests by petitioner that he was not prepared to proceed with the hearing, and several requests for the documentary evidence that petitioner had originally asked the assistant to secure, the hearing officer nevertheless proceeded with the hearing and refused to turn over the documents, the existence of which the hearing officer acknowledged.[3] As a result, we hold that petitioner was denied his constitutional right to assistance in marshaling evidence and presenting a defense with respect to the very serious charges against him.

In petitioner's Article 78 proceeding, the New York State Supreme Court, Westchester County, found that petitioner's due process rights had been violated with respect to two of the charges by respondents' failure to furnish petitioner with the investigatory reports he requested. *In re Giano v.*

*Sullivan,* No. 3542/87, slip op. at 3–4 (N.Y. Sup.Ct., Westchester Co., June 26, 1987). The court further held that, absent these reports, the two charges in question, setting fires and leaving an assigned area, were not supported by substantial evidence. *Id.* at 4. The Appellate Division, Second Department, reversed this portion of the Supreme Court's judgment. *In re Giano v. Sullivan,* 137 A.D.2d 529, 524 N.Y.S.2d 270 (2d Dept.1988). The Appellate Division noted that under existing regulations, an inmate "shall be allowed to submit *relevant* documentary evidence ... on his behalf." 524 N.Y.S.2d at 272 (citing 7 NYCRR 254.6(c)). The court held that petitioner "failed to show how any of the investigatory reports which he requested were relevant to his defense, since he never raised any defense to the charges against him." *Id.* The Appellate Division further found that substantial evidence supported each of the charges against petitioner. *Id.*

The Appellate Division's conclusion that respondents' failure to furnish the requested documents did not violate petitioner's due process rights is insupportable as a matter of law. An inmate facing disciplinary charges has a constitutional right to present documentary evidence in his defense when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals. *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979. And as noted above, an inmate is entitled to assistance in marshaling evidence and presenting a defense. *Eng v. Coughlin,* 858 F.2d at 897–98. It is clear that no effort was made to assist petitioner in marshaling documentary evidence for his defense. While the specific relevance of the requested documents cannot be ascertained because they were never furnished to petitioner and are not part of the record, reports made by corrections officers in the immediate vicinity of the charged violations are virtually certain to be relevant to the

---

**3.** Petitioner's hearing took place on the third day of his having been specially confined upon being returned to Sing Sing. Since respondents had up to seven days to commence and fourteen days to complete the disciplinary hearing from the time of petitioner's confinement, 7 NYCRR

251.5–1; *see Powell v. Ward,* 392 F.Supp. 628, 632 (S.D.N.Y.1975), *aff'd as modified,* 542 F.2d 101 (2d Cir.1976), the hearing officer was free to adjourn the hearing for up to eleven days without running afoul of statutory and constitutional requirements.

issue of the petitioner's guilt of those violations, particularly where no eyewitness accounts are otherwise available. In holding that petitioner failed to establish how these reports were relevant to his defense because he did not present a defense, the Appellate Division circularly holds petitioner responsible for the very consequences of his due process deprivation. Petitioner did not present a defense precisely because he was unconstitutionally deprived of the tools necessary to do so. And as we discuss below in the section on "Harmless Error," given the fundamental nature of this deprivation, the Appellate Division's finding that each of the charges against petitioner was supported by substantial evidence is beside the point.

 Finally, respondent's contention that the requested documents were properly withheld by the hearing officer because they contained confidential information is a *post hoc* justification without any support in the record. Indeed, where a hearing officer denies an inmate's request to present witnesses or documentary evidence for reasons of institutional safety or confidentiality, such reasons must be set forth expressly and in writing. 7 NYCRR 254.5; *Powell v. Ward*, 487 F.Supp. 917, 929–30 (S.D.N.Y.1980), *aff'd as modified*, 643 F.2d 924 (2d Cir.) (per curiam), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981); *see also Wolff v. McDonnell*, 418 U.S. at 566–67, 94 S.Ct. at 2979–80. The record contains no indication that such a finding of confidentiality was made by the hearing officer in this case.

For the above reasons, we hold that petitioner was unconstitutionally denied his right to marshal evidence and present a defense to the disciplinary charges against him.

## II. *Impartial Hearing Officer*

 Petitioner also claims that he was denied his due process right to have his hearing conducted by a fair and impartial hearing officer. In petitioner's Article 78 proceeding, the New York State Supreme Court, Westchester County, found that the hearing record contained no evidence that Hearing Officer Kehn had been influenced in his decision with respect to petitioner by the fact that he had conducted prior hearings involving the two other alleged escapees. While it is true that hearing officers may permissibly conduct disciplinary hearings for several inmates involved in a single incident, *Powell v. Ward*, 562 F.Supp. 274, 277–78 (S.D.N.Y.1983), we find that the circumstances in which petitioner's hearing was conducted, combined with the hearing officer's participation in the other escapees' hearings, created an unacceptable risk of unfairness.[4]

It is apparent from the record that both corrections officers who testified against petitioner during the hearing remained in the hearing room throughout the entire course of the proceeding, at times interrupting petitioner when he sought to speak on his own behalf. *See, e.g.,* Appendix to Brief for Respondent–Appellant at A37. One of these witnesses, Lieutenant Wilkerson, had been in charge of the investigation into the escape, and had drafted the misbehavior report against petitioner. Moreover, when petitioner was asked to leave the hearing room so that the hearing offi-

---

4. While a state court's determination on the merits of a factual issue normally must be presumed correct under 28 U.S.C. § 2254(d), such is not the case where the material facts were not developed at the state court hearing, 28 U.S.C. § 2254(d)(3), or where such factual determination is not fairly supported by the record, 28 U.S.C. § 2254(d)(8). With regard to the issue of the hearing officer's impartiality, the state court focused entirely on the fact that the hearing officer presided over the prior hearings of the other two escapees. The court failed to consider the totality of circumstances surrounding petitioner's hearing which, when viewed together with the hearing officer's participation in the other escapees' hearings, posed a constitutionally unacceptable risk of unfairness. Moreover, insofar as the historical facts are plain from the record, we are not barred by 28 U.S.C. § 2254(d) from reviewing so much of the state court's determination as reflects the application of a federal legal standard—namely, the due process requirement of impartiality—to these undisputed historical facts. *See United States ex rel. Thomas v. New Jersey,* 472 F.2d 735, 737–38 (3d Cir.) (citing *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963)), *cert. denied,* 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973).

cer could write up the disposition of the case, Lieutenant Wilkerson and the other corrections officer, Officer Harrison, were permitted to stay with the hearing officer while he determined petitioner's guilt and punishment.

It is now well established that an inmate facing a disciplinary hearing is entitled to a fair and impartial hearing officer. 7 NYCRR 253.1, 254.1 (guarantying right to impartial hearing officer); *see McCann v. Coughlin*, 698 F.2d 112, 122 (2d Cir.1983) (members of prison disciplinary Adjustment Committee must be fair and impartial); *Powell v. Ward*, 542 F.2d 101, 102–03 (2d Cir.1976) (recognizing due process requirement of impartial hearing officer). In this regard, a person who was a witness to or who has investigated an incident that is the subject of a disciplinary proceeding is disqualified from acting as a hearing officer relating to that incident. 7 NYCRR 254.1; *see Powell v. Ward*, 487 F.Supp. at 931. Insofar as Lieutenant Wilkerson and Officer Harrison were disqualified from acting as petitioner's hearing officers because they either investigated or were witnesses to petitioner's violations, they were likewise disqualified from advising petitioner's hearing officer and from participating in petitioner's hearing in any capacity other than as mere witnesses. The fact that these officers stayed in the hearing room throughout the proceeding, engaged in colloquy with petitioner, as well as remained and, in all probability, communicated *ex parte* with the hearing officer while he was deciding petitioner's case [5] pose a serious risk that the fairness of petitioner's hearing was compromised. Viewed together with the fact that the hearing officer had previously presided over the hearings of the other two escapees, both of whom were

found guilty, and with the extremely harsh penalty that was imposed on petitioner [6], we find that this risk of unfairness is constitutionally unacceptable. We thus hold that petitioner was denied his constitutional right to an impartial hearing officer.

### III. *Harmless Error*

We decline to apply harmless error analysis to the constitutional defects in petitioner's disciplinary hearing. "Harmless error analysis has not been applied to rights that are essential to the fundamental fairness of a trial or that promote systemic integrity and individual dignity." *Johnstone v. Kelly*, 808 F.2d 214, 218 (2d Cir. 1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *see also Biller v. Lopes*, 834 F.2d 41, 46 (2d Cir.1987) (quoting *Johnstone v. Kelly, supra*). The right to a trial before an impartial judge or tribunal is one such fundamental right not subject to harmless error analysis. *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *see Delaware v. Van Arsdall*, 475 U.S. 673, 681–82, 106 S.Ct. 1431, 1436– 37, 89 L.Ed.2d 674 (1986). The right to counsel as well as to self-representation are others. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); *Johnstone*, 808 F.2d at 216 (right to self-representation). *See also Biller*, 834 F.2d at 46 (use of an improperly obtained conviction to prevent a defendant from taking the stand in his own defense is not subject to harmless error analysis). We have found that petitioner in this case was denied his right to marshal evidence and present a defense to the serious disciplinary charges against him. We also found that he was denied his right to an impartial hearing officer. It cannot seriously be contested that both these constitutional defects call into question the funda-

---

5. Because the tape recorder was turned off between the time petitioner was asked to leave the hearing room and the time he returned for the announcement of the disposition, there is no record of the discussion, if any, that took place between the hearing officer and Officer Harrison and Lieutenant Wilkerson. However, we find that these officers' mere presence with Hearing Officer Kehn while the latter was deciding petitioner's case raises serious questions about the hearing officer's impartiality.

6. In contrast to petitioner's penalty of five years confinement in SHU with five years suspension of packages, commissary, and telephone privileges, Darius Gittens, one of the other escapees, was penalized with two years in SHU and one year suspension of packages, commissary, and telephone privileges. Appendix to Brief for Petitioner–Appellant at A3. No records are available with respect to the third escapee, Thomas Linz.

mental fairness of petitioner's disciplinary hearing. Harmless error analysis is therefore inappropriate.

## CONCLUSION

Petitioner Julio Giano's petition for a writ of habeas corpus is granted. All references to the December 14, 1986 disciplinary hearing shall be expunged from petitioner's record. Petitioner shall be released from SHU into the general prison population unless and until respondents promptly afford him a new disciplinary hearing.

SO ORDERED.

### On Motion to Alter or Amend

By Memorandum Decision dated January 10, 1989, this court granted petitioner Giano's petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. *Giano v. Sullivan, et al.,* 709 F.Supp. 1209 (S.D.N.Y.1989). Having found that petitioner's December 14, 1986 disciplinary hearing was conducted in violation of petitioner's constitutional due process rights, we ordered that all references to the hearing be expunged from petitioner's record. We further ordered that petitioner "be released from SHU into the general prison population unless and until respondents promptly afford him a new disciplinary hearing." *Id.* at 1218. Judgment was entered on January 24, 1989.

By letter dated January 22, 1989, petitioner has requested that this court modify the January 10 Memorandum Decision by deleting the phrase "unless and until respondents promptly afford him a new disciplinary hearing." We construe this request for modification as a motion pursuant to Fed.R.Civ.P. 59(e) "to alter or amend the judgment." [1]

It is the general practice when granting habeas corpus relief that the state be given an opportunity to retry the petitioner within a certain period of time. *See Blackledge*

*v. Perry,* 417 U.S. 21, 31 n. 8, 94 S.Ct. 2098, 2104 n. 8, 40 L.Ed.2d 628 (1974) (the state is wholly free to conduct a trial *de novo* on the original charge); *Bromley v. Crisp,* 561 F.2d 1351, 1364 (10th Cir.1977) (holding a conviction invalid and granting the writ of habeas corpus do not generally bar retrial on the original charge), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978); *United States ex rel. Oliver v. Vincent,* 498 F.2d 340, 346 (2d Cir.1974) (affirming grant of writ affording state sixty days to retry petitioner).

Similarly, a new hearing is generally accorded where procedural errors are found to invalidate a prison disciplinary proceeding. *See, e.g., Matter of Coleman v. Coombe,* 65 N.Y.2d 777, 492 N.Y.S.2d 944, 482 N.E.2d 562 (1985) (new hearing where witness request at prior hearing had been improperly denied); *Matter of Hill v. LeFevre,* 124 A.D.2d 383, 507 N.Y.S.2d 330 (3d Dept.1986) (new hearing where hearing officer improperly relied on *ex parte* evidence and failed to call witness); *Matter of Mercado v. Kirk,* 118 A.D.2d 917, 499 N.Y.S.2d 484 (3d Dept.1986) (new hearing where hearing officer erroneously refused to call witnesses and to investigate charges of bias); *Matter of Keleman v. Coughlin,* 100 A.D.2d 732, 473 N.Y.S.2d 618 (4th Dept. 1984) (new hearing where inmate was not provided adequate assistance at original hearing and inmate's reasonable factual claim was not investigated); *Matter of McCleary v. LaFevre,* 98 A.D.2d 866, 470 N.Y.S.2d 841 (3d Dept.1983) (new hearings where inmates not advised of facts supporting charges against them).

Given the serious nature of the charges against petitioner (i.e., escape, setting fires, and leaving an assigned area), and given that the procedural defects (i.e., inadequate assistance and lack of impartial hearing officer), while serious, can be cured, we find that respondents should be given an

---

[1]. On February 22, 1989, while petitioner's motion for modification was pending, respondents filed a notice of appeal from the January 24, 1989 judgment. Notwithstanding the filing of the notice of appeal, this court has jurisdiction to decide the Rule 59 motion. Fed.R.App.P. 4(a)(4); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 59–61, 103 S.Ct. 400, 402–03, 74 L.Ed.2d 225 (1982).

opportunity to conduct a new disciplinary proceeding.

While we are aware that petitioner is currently at a different facility from that at which the incidents occurred, we believe that any possible prejudice can be alleviated by the provision of adequate assistance, and by the making available of all witnesses and other evidence to which petitioner would have been entitled at the time and place of his original hearing.

Accordingly, petitioner's motion for modification of this court's January 10, 1989 Memorandum Decision is denied.

SO ORDERED.