Leslie A. SMITH, Petitioner,

v.

Robert FARLEY, Respondent.

No. 3:93cv00165 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

July 27, 1993.

Leslie Allen Smith, pro se.

Michael A. Hostettler, Office of Indiana Atty. Gen., Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On March 10, 1993, this *pro se* petitioner, Leslie A. Smith, filed for a writ of habeas corpus under 28 U.S.C. § 2254. The petitioner is currently incarcerated at the Indiana State Prison in Michigan City, Indiana. The petitioner is challenging the disciplinary action from a CAB proceeding. On May 24, 1994, the Attorney General of Indiana filed a "Return to Order to Show Cause" in compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). On May 31, 1994, the petitioner filed a traverse.

In his first petition seeking a writ of habeas corpus, the petitioner challenged the disciplinary hearing held before the CAB on February 18, 1992. The petitioner asserted that the CAB violated his due process rights by failing to allow the petitioner to examine a letter. The letter was a major part of the evidence considered by the CAB. On July 22, 1993, this court found that the abovementioned CAB proceeding and specifically the handling of the letter contravened the petitioner's due process rights. *See Appendix "A"*. The court remanded the case to the CAB of the Indiana State Prison, specifically noting that the CAB's prior decision to not allow the petitioner access to a confidential letter was a violation of the petitioner's rights to due process. On October 28, 1993, pursuant to this court's order, a CAB rehearing was held. The CAB found the petitioner guilty on the charge of trafficking marijuana within the prison. On January 20, 1994, Petitioner re-filed this petition seeking relief under 28 U.S.C. § 2254.

It needs to be emphasized that this court does not sit as a trier de novo for cases of this nature and does not sit as a court of general common law review. The collateral review that is envisioned by § 2254 focuses on violations of the federal Constitution. The specific burden on this court for this review is found in such cases as *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir.1992), *Forbes v. Trigg*, 976 F.2d 308 (7th Cir.1992), *Miller v. Duckworth*, 963 F.2d 1002 (7th Cir.1992), and *Harris v. Duckworth*, 909 F.2d 1057 (7th Cir.1990). *See also Billops v. Wright*, 803

F.Supp. 1439 (N.D.Ind.1992). The petitioner must also pursue the available administrative remedies mandated in *Markham v. Clark*, 978 F.2d 993 (1992).

In seeking a writ of habeas corpus, the petitioner asserts that several of his due process rights were violated during the CAB proceeding. The record of this proceeding is before the court and must be examined under the constitutional standards established in *Supt., Mass. Corr. Institution at Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). This court notes the decision in *Rasheed–Bey v. Duckworth*, 969 F.2d 357 (7th Cir.1992). In *Rasheed–Bey*, the Seventh Circuit listed the applicable due process requirements for a CAB hearing:

> The requirements imposed by the Due Process Clause are "flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). We "cannot automatically apply procedural rules designed for free citizens in an open society . . . to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974). Nonetheless, "a prisoner is not wholly stripped of constitutional protection when he is imprisoned for a crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555–56, 94 S.Ct. at 2974–75. Accordingly, in considering the command of the Due Process Clause in light of the peculiar exigencies of the prison setting, the Supreme Court has held that an inmate, while not entitled to the full panoply of due process rights accorded to free citizens, is entitled to fundamental protection from the arbitrary action of government. *Wolff*, 418 U.S. at 556–58, 94 S.Ct. at 2974–76; *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871.
>
> Beginning with *Wolff*, the Supreme Court established the minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. Before being deprived of a protected liberty interest, a prisoner is entitled to (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). Inmates have no right to confront and cross examine adverse witnesses; thus, a disciplinary board's decision is not limited to evidence presented at the hearing. *Baxter v. Palimigiano*, 425 U.S. 308, 322–23, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976). Furthermore, this court has held that an inmate is also entitled to disclosure of exculpatory evidence, unless that disclosure would unduly threaten institutional concerns. *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Dawson v. Smith*, 719 F.2d 896, 898–99 (7th Cir.1983). If such information is to remain confidential, it must be supported by some indication of reliability. *Mendoza*, 779 F.2d at 1295 (citations omitted).

*Id.*

■ The petitioner challenges the sufficiency of this evidence. First, the petitioner asserts that he presented evidence on "his style of writing, his signature, and the typewriter he had owned." *See Petitioner's Motion to Show Cause Traverse/Response.* The thrust of this evidence, according to the petitioner, illustrates that the inculpatory letter could not have been written by the petitioner. In addition, the petitioner asserts that another inmate set him up in order to have the petitioner "locked up, and believing that he would be transferred to another institution." *Id.*

The petitioner's abovementioned claims actually contain both a procedural element and a substantive element. "A prison disciplin-

ary body may not arbitrarily refuse to consider exculpatory evidence offered by a prisoner simply because the record already contains the minimal evidence suggesting guilt required by [*Hill*]." *Viens v. Daniels*, 871 F.2d 1328, 1336 n. 2 (7th Cir.1989). "In this connection, where a prisoner believes he was denied a meaningful opportunity to contest the charges against him due to a disciplinary board's refusal to consider evidence or allow the prisoner access to relevant material, the challenge is one of procedural due process rather than sufficiency of the evidence." *Id.* The petitioner indicates that the CAB heard testimony and took evidence on both these concerns. Therefore, there is no procedural violation insofar as the petitioner has been given a meaningful opportunity to contest the abovementioned charges.

■ The petitioner's claim must also be reviewed in light of the Supreme Court in *Supt., Mass. Corr. Institution at Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In *Hill*, the Court outlined and explained the requisite standards for evaluating the proceedings. In *Hill*, a prison guard discovered an inmate who had been assaulted and observed three inmates fleeing the area. All three inmates were found guilty of assault based on the prison guard's report of the event. Clearly, the prison disciplinary officials could fit the abovementioned facts into a plethora of scenarios. In resolving this quandary, the *Hill* Court explained:

> The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made by the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence so that the findings

of the disciplinary board were without support or otherwise arbitrary.

*Id.* at 457, 105 S.Ct. at 2775.

In finding that the evidence adduced at the prison disciplinary hearing met the due process requirement, the Court concluded:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require the examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–56, 105 S.Ct. at 2774–75 (citations omitted).[1]

. The petitioner presented his evidentiary arguments concerning the typewriter and the purported scheme by a fellow inmate to set him up to the CAB. The CAB found that the petitioner was guilty of the charge. This court must review the result in light of *Hill*. In *Rights of Prisoners* by Professor Michael Mushlin, the author indicates that the "some evidence" standard of *Hill* has been interpreted in various ways. *See Michael Mushlin, Rights of Prisoners* at 512. "The Second Circuit has said that a reviewing court should not overturn a prison disciplinary board's finding of guilt if there is any evidence to support the board's conclusion." *Id.* "The Third Circuit has held that the proper standard for reviewing a disciplinary committee decision is the substantial evidence test, citing 18 U.S.C. § 4042 and 28 U.S.C. § 2255." *Id.* "The Seventh Circuit has stated that the role of a reviewing court is limited to determining whether there is sufficient evidence

1. Recently, in *Lasley v. Godinez*, 833 F.Supp. 714 (N.D.Ill.1993) and *Harms v. Godinez*, 829 F.Supp. 259 (N.D.Ill.1993), Judges Aspen and Plunkett outlined the judicial parameters of the sufficient evidence concepts as elucidated in *Hill*,

*supra.* Both Judges Aspen and Plunkett reviewed the recent Seventh Circuit opinion on this issue written by Judge Manion in *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir.), *reh'g denied*, (1992) (*en banc*).

to support the disciplinary board's decision." *Id.*

In *Hamilton v. O'Leary, supra,* the Seventh Circuit explained the parameters of the proper review of CAB proceedings as mandated by *Hill.* The *Hamilton* court explained that the decision is based only on "'whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id.* (quoting *Hill, supra*). In addition, the *Hamilton* court indicated the requisite review "'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence.'" *Id.* (quoting *Hill, supra*). Finally, the *Hamilton* court added that "the evidence before the disciplinary board must 'point to the accused's guilt.'" *Id.* (quoting *Lenea v. Lane,* 882 F.2d 1171, 1175 (7th Cir.1989).

On this issue, the Attorney General argues that the CAB's action was based on sufficient evidence. In constructing this argument, the Attorney General includes an excerpt from a prison official in response to the petitioner's administrative appeal. It is apparent from this excerpt that the CAB did not contravene the petitioner's due process rights under *Hill.*

■ The petitioner also challenges the CAB's inclusion of confidential information in the proceeding. In the abovecaptioned matter, the CAB made confidential information a part of the record. *See Wells v. Israel,* 854 F.2d 995 (7th Cir.1988). In *Carter v. Duckworth,* 739 F.Supp. 1259 (N.D.Ind.1989), this court dealt with the issues surrounding the use of confidential information in a CAB proceeding. This court specifically invoked the analysis mandated in *Wells v. Israel, supra:*

The court must specifically examine the use of confidential information under the four alternative established in *Wells v. Israel,* 854 F.2d 995, 998–999 (7th Cir.1988). *Wells,* establishes four alternatives to prove confidential information is reliable in a C.A.B. hearing. These options are: (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the Disciplinary Committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the Disciplinary Committee that "he had first hand knowledge of the sources of the information and considered them reliable on the basis of their past record of reliability", or (4) in camera review of material documenting the investigator's assessment of the credibility of the confidential information. *See also Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985), cert. denied, 476 U.S. 1142, 90 L.Ed.2d 697, 106 S.Ct. 2251 (1986).

*Id.* at 1261–62. This court notes that there is a statement on the record by the Superintendent, Robert A. Farley, that "he had first hand knowledge of the sources of the information and considered them reliable." *See Return to Order to Show Cause.* This court finds that this statement is tantamount to "a statement on the record by the chairman of the Disciplinary Committee that 'he had first hand knowledge of the sources of the information and considered them reliable on the basis of their past record of reliability.'" *See Carter v. Duckworth, supra.*

■ Finally, the petitioner also challenges the internal investigation of this matter. On this issue, as outlined in the administrative appeal, the prison investigator "found portions of this case to be very frustrating because he was not permitted to talk to Jamie Doolin because she was a juvenile." *See Return to Order to Show Cause.* However, as noted in the administrative appeal, "[t]he investigation does have documentation which demonstrates your guilt on this matter." *Id.* "Nothing in *Wolff* absolutely requires prison officials to investigate disciplinary charges prior to a hearing." *United States ex rel. Wilson v. DeRobertis,* 508 F.Supp. 360, 362 (N.D.Ill.1981). *See also Woodall v. Partilla,* 581 F.Supp. 1066 (N.D.Ill.1984). This court finds that the evidence was sufficiently investigated and presented to the CAB.

■ Finally, the petitioner asserts a due process violation premised on the fact that the CAB failed to adhere to the provisions outlined in the ADPP. This court notes a violation of state law is not cognizable under 28 U.S.C. § 2254. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385

(1991). All of the procedures requisite to a CAB proceeding as mandated by *Wolff* and *Hill* have been followed.

■ The petitioner asserts that he was denied his constitutionally protected right to Due Process because he was segregated prior to a hearing and without formal charges. This court notes that the Seventh Circuit in *Smith v. Shettle,* 946 F.2d 1250 (7th Cir. 1991), revisited the due process ramifications of the Indiana Department of Correction policy and procedures for administrative segregation. As Judge Posner states in *Smith v. Shettle,* " '[s]egregation' in this context means being separated from the general prison population and held in an approximation to solitary confinement." *Id.* Furthermore, Judge Posner states "[i]t can be imposed either as a form of discipline for infractions of prison regulations ("disciplinary segregation") or ... for protective purposes ("administrative segregation")."

Specifically, the petitioner contends that he was confined in disciplinary segregation from December 24, 1991 until February 5, 1992. The first CAB proceeding was scheduled for February 11, 1992, however, the proceeding was postponed for one week pursuant to the petitioner's request. The CAB proceeding occurred on February 18, 1992. In the petitioner's "Brief in Support of Motion for Summary Judgment" filed on June 29, 1993, he indicates that on December 24, 1991, upon placing him in the IDU, prison investigator Caldwell informed him that "he was being locked up for attempting to traffic with your family." *See Brief in Support of Motion for Summary Judgment.* The petitioner also explains that he "was further denied any prehearing segregation determination, and was [not] reviewed about continuing the segregation until January." *Id.* In addition, the petitioner states that "[d]uring this time period the investigator Karl Swihart, three times asked for and received continuance[s] to keep [him] held in punitive segregation pending the investigation." *Id.* The Attorney General's only argument is that the administrative segregation regulations create no due process interest. On this issue, the Attorney General argues that the Supreme Court in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864,

74 L.Ed.2d 675 (1983), indicated that the due process ramifications for administrative segregation are dependent on state statutes and regulations for the creation of a liberty interest. If a state statute or regulation creates a liberty interest, then a prisoner is entitled to the requisite procedural rights beginning with notice and an opportunity to be heard. However, in Indiana, as the Attorney General argues, in *Shropshire v. Duckworth,* 654 F.Supp. 369 (N.D.Ind.1987), the court explained that the Indiana Department of Correction procedures entitled " 'Administrative Segregation Procedure ... do not create a liberty interest....' " *Id.*

On this issue, however, the Attorney General is simply wrong. This prisoner was not placed in administrative segregation. In fact, this court finds that the petitioner was placed in disciplinary segregation pursuant to Indiana Code § 11–11–5–6. The statute reads:

> Disciplinary action may not be taken against a person before a determination of guilt. However, a person charged with misconduct may be confined or separated from the general population of the facility or program for a reasonable period to time if his continued presence in the general population poses a serious threat to himself, others, property, or the security of the facility or program. The department must review the status of that person at least once every five days to determine if the reason for segregation still exists. Any time spent confined or separated from the general population before a determination of guilt must be credited toward any period of disciplinary segregation imposed.

*See Indiana Code* 11–11–5–6. The facts as outlined by the petitioner track the requirements of this statute. Undoubtedly, the most important aspect of this statute is that any disciplinary segregation served must be credited by the CAB. In the most recent proceeding, the CAB indicated that the petitioner's sanction was "Disciplinary segregation, specifically: 6 months dis seg-time served 12–24–91 to 6–23–92." Therefore, it is clear that the CAB credited the petitioner in his original sanction with his time in disciplinary segregation in compliance with the

statute. *See also Pardo v. Hosier,* 946 F.2d 1278 (7th Cir.1991).

A careful review of this record reveals no violation of the Constitution of the United States with reference to the CAB proceedings here involved. The petition is, therefore, **DENIED.**

**IT IS SO ORDERED.**

APPENDIX A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

Nos. 3:93cv0164AS, 3:93cv0165AS.

Leslie Allen Smith, Plaintiff

v.

Robert A. Farley, Supt. I.S.P., Defendant

Leslie Allen Smith, Plaintiff

v.

Robert A. Farley, Superintendent, Defendant

*MEMORANDUM AND ORDER*

On the same day, March 10, 1993, the same petitioner, appearing *pro se,* Leslie Allen Smith, filed claims under the same statute, 28 U.S.C. § 2254. The return filed in each case on June 28, 1993, demonstrates the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). The next day, June 29, 1993, this petitioner filed a motion for summary judgment with an elaborate brief and attachments. The petitioner also filed a Traverse on July 2, 1993. This court literally has a mass of paper before it in this case. The petitioner's briefs were very lawyerlike and this court appreciates the petitioner's efforts. This court also notes that the petitioner sent a letter to this court focusing on access to the court. This court cannot deal with an issue of that nature under 28 U.S.C. § 2254. An issue of that nature is only cognizable under 28 U.S.C. § 1983. *See Preiser v. Rodriguez,* 411 U.S. 475 [93 S.Ct. 1827, 36 L.Ed.2d 439] (1973)

The petitioner is confined at the Indiana State Prison, Michigan City, Indiana, serving a 70–year sentence for escape, attempted murder and attempted kidnapping. Here, however, the concern is institutional discipline before a Conduct Adjustment Board (CAB), invoking the constitutional mandates of *Supt., Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445 [105 S.Ct. 2768, 86 L.Ed.2d 356] (1985), and *Wolff v. McDonnell,* 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974). In this circuit and court, a large bundle of law is developing in regard to this kind of collateral review under 28 U.S.C. § 2254. *Hamilton v. O'Leary,* 976 F.2d 341 (7th Cir.1992), *Forbes v. Trigg,* 976 F.2d 308 (7th Cir.1992), *Miller v. Duckworth,* 963 F.2d 1002 (7th Cir.1992), and *Harris v. Duckworth,* 909 F.2d 1057 (7th Cir.1990). *See also Billops v. Wright,* 803 F.Supp. 1439 (N.D.Ind.1992).

I. 3:93CV164AS

In the abovecaptioned matter, the petitioner was accused of violating a specific rule at the Indiana State Prison. Specifically, on November 24, 1992, Officer Eskridge observed the petitioner and his wife engaging in a sexual act. Insofar as such conduct is a not allowed at the Indiana State Prison, the petitioner was charged with a violation of the prohibition against engaging in sexual acts with another as outlined in the applicable rules and regulations. *See* Code No. 21(b).

On December 1, 1992, the petitioner was notified that a disciplinary hearing was scheduled on this matter. On December 3, 1992, the CAB held a hearing and found the petitioner had in fact violated the abovementioned policy. Additionally, on January 12, 1993, the Appeal Board indicated that the CAB followed the requisite procedures and that their decision was correct in light of the evidence. This court notes that it has reviewed the rather voluminous record stemming from this CAB proceeding between November 24, 1992, and January 12, 1993. The Indiana Attorney General indicates that the sole and only sanction that was imposed in the case was two weeks commissary restriction and a notation of the incident in the petitioner's classification records. The petitioner maintains that he was also denied a job classification, and denied back pay in

light of this finding on his conduct report.[1] It also needs to be mentioned that the federal question jurisdiction of this court cannot be used to require state officials to merely comport their conduct to state law. Such applies to both cases under 28 U.S.C. § 2254, *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475 [116 L.Ed.2d 385] (1991), and under 42 U.S.C. § 1983, *Pennhurst v. Halderman,* 465 U.S. 89 [104 S.Ct. 900, 79 L.Ed.2d 67] (1984).

For purposes of the abovecaptioned case, this court notes the decision in *Rasheed–Bey v. Duckworth,* 969 F.2d 357 (7th Cir.1992). In *Rasheed–Bey,* the Seventh Circuit listed the applicable due process requirements for a CAB hearing:

The requirements imposed by the Due Process Clause are "flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms,* 459 U.S. 460, 472 [103 S.Ct. 864, 871, 74 L.Ed.2d 675] (1983). We "cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff v. McDonnell,* 418 U.S. 539, 560 [94 S.Ct. 2963, 2976, 41 L.Ed.2d 935] (1974). Nonetheless, "a prisoner is not wholly stripped of constitutional protection when he is imprisoned for a crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555–56 [94 S.Ct. at 2974–75.] Accordingly, in considering the command of the Due Process Clause in light of the peculiar exigencies of the prison setting, the Supreme Court has held that an inmate, while not entitled to the full panoply of due process rights accorded to free citizens, is entitled to fundamental protection from the arbitrary action of government. *Wolff,*

418 U.S. at 556–58 [94 S.Ct. at 2974–76;] *Hewitt,* 459 U.S. at 472 [103 S.Ct. at 871.]

Beginning with *Wolff,* the Supreme Court established the minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. Before being deprived of a protected liberty interest, a prisoner is entitled to (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent Mass. Corr. Inst. v. Hill,* [472 U.S. 445, 453] 105 S.Ct. 2768, 2773 [86 L.Ed.2d 356] (1985); *Wolff v. McDonnell,* 418 U.S. 539, 563–67 [94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935] (1974). Inmates have no right to confront and cross examine adverse witnesses; thus, a disciplinary board's decision is not limited to evidence presented at the hearing. *Baxter v. Palimigiano,* 425 U.S. 308, 322–23 [96 S.Ct. 1551, 1560, 47 L.Ed.2d 810] (1976). Furthermore, this court has held that an inmate is also entitled to disclosure of exculpatory evidence, unless that disclosure would unduly threaten institutional concerns. *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), *cert. denied,* 476 U.S. 1142 [106 S.Ct. 2251, 90 L.Ed.2d 697] (1986); *Dawson v. Smith,* 719 F.2d 896, 898–99 (7th Cir.1983). If such information is to remain confidential, it must be supported by some indication of reliability. *Mendoza,* 779 F.2d at 1295 (citations omitted).

*Id.* Here, based on the record, this court finds that the requisite procedural parame-

---

1. This court notes that this case is essentially about a change in the conditions of confinement, however, the fact that the disciplinary matter is recorded on the petitioner's record may have a future effect on a matter concerning the petitioner's length of confinement. Therefore, this court will not spend unnecessary time discussing whether this case should have been asserted as a case under 42 U.S.C. § 1983. More importantly, this court has been instructed to avoid the above-mentioned polemics in order to efficiently and expeditiously evaluate such petitions. At any rate, it is probable that the abovementioned procedure may affect the duration of his confinement. Therefore, there is a strong argument that this procedure may equate to "a quantum change in the level of his custody." *See Preiser v. Rodriguez,* 411 U.S. 475 [93 S.Ct. 1827, 36 L.Ed.2d 439] (1973); *Graham v. Broglin,* 922 F.2d 379, 380–81 (1991).

ters for a CAB hearing of this ilk are in order.

Here, insofar at the petitioner focuses on issues surrounding the sufficiency of the evidence, this court notes the relevant language of *Supt., Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445 [105 S.Ct. 2768, 86 L.Ed.2d 356] (1985). On this issue, in *Culbert v. Young,* 834 F.2d 624, 631 (7th Cir. 1987), the Seventh Circuit, speaking through Judge Ripple, explained:

> the kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides, *see Saenz v. Young,* 811 F.2d 1172 (7th Cir.1987). The Constitution does not require that the evidence relied upon logically preclude any conclusion but the one reached by the disciplinary board ...

*Id.*

This court knows judicially from the mass of hundreds of cases emanating from the Indiana State Prison for which it has been responsible since 1976 that security between inmates and visitors is a highly sensitive and difficult problem of prison administration. It is well known that even with contact visitation there can be the attempted and sometimes successful transfer of contraband from visitor to inmate. This kind of transfer can also take place in the context of what might seem to the outside viewer as an embrace or acts of affection. Under the Constitution of the United States in general, and the Fourteenth Amendment in particular, prison officials have the discretion to closely regulate visitation between inmates and visitors. Even in a liberated democratic society, it is still within the discretion of the General Assembly of Indiana by statute and the prison authorities by regulation pursuant to statute to closely regulate the conduct of prison inmates and visitors. The plain and blunt fact is that no matter how innocent the petitioner's intentions *may* have been, he clearly violated regulations regarding the conduct of inmates and visitors.

It needs to be emphasized that this court does not sit as a trial de novo with regard to prison disciplinary proceedings, rather it sits to determine whether there were constitutional errors in those proceedings. The focus must be on constitutional claims. *Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. den.,* 489 U.S. 1088 [109 S.Ct. 1552, 103 L.Ed.2d 855] (1989). Here, the CAB followed the requisite procedures. Neither is it the proper function of this court under the mandate of *Supt., Mass Corr. Institution,* 472 U.S. at 445 [96 S.Ct. at 1560] to re-weigh conflicting evidence and to make credibility determinations. *See Viens v. Daniels,* 871 F.2d 1328 (7th Cir.1989).

There is no violation shown in this record of the basic constitutional mandates of *Supt.* and *Wolff.* The extensive and highly enlightening discussion of Judge Wood in *Pardo v. Hosier,* 946 F.2d 1278 (7th Cir.1991), completely supports this analysis:

> In evaluating constitutional claims of prisoners, we must balance the need to protect prisoners' procedural rights against the need for prison safety and security. *Redding v. Fairman,* 717 F.2d 1105, 1112 (7th Cir.1983), *cert. denied,* 465 U.S. 1025 [104 S.Ct. 1282, 79 L.Ed.2d 685] (1984). In prison disciplinary proceedings, "prison administrators must be 'accorded wide-ranging deference in the ... execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Mathews v. Fairman,* 779 F.2d 409, 415 (7th Cir.1985) (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861 [60 L.Ed.2d 447] (1979)).

*Id.* The holding in *Pardo* is especially applicable to the situation at issue here. Furthermore, the evidence here is sufficient under *Supt.,* and the procedures here pass muster under *Wolff.* In light of the abovementioned caselaw and for purposes of this CAB hearing, there is simply no basis for relief under 28 U.S.C. § 2254.

## II.   3:93CV165AS

In the abovecaptioned matter, the petitioner was charged with attempting to traffic drugs into the Indiana State Prison. Apparently, the petitioner sent a letter to an individual and described in great detail a plan to traffic narcotics into the prison. In a deci-

sion issued on February 18, 1992, the CAB found the petitioner guilty of the abovementioned charge and ordered that he be confined for six months in disciplinary segregation between December, 1991, and June, 1992.

The events preceding this CAB hearing warrant discussion as well. On December 24, 1991, the petitioner maintains that Lt. John Sharp and Investigator James Cadwell informed him that he was being "locked up for investigation." *See Petitioner's Brief* at 2. Apparently, Investigator Cadwell informed the petitioner that "[you are] being locked up for attempting to traffic with your family." *Id.* Next, the petitioner was escorted to IDU and he remained in segregation from December 24, 1991 until February 5, 1991. The petitioner further explains that during the segregation period, Investigator Karl Swihart, asked for and received a continuance to hold the petitioner in segregation pending the investigation. On this matter, the petitioner also explains:

> At no time was [the petitioner] allowed to be included in the investigation, and or make any statement. The [petitioner] was further denied any pre-hearing segregation determination, and wasn't reviewed about continuing the segregation until January. [The petitioner's] personal property wasn't removed from his cell until January 10th, 1992, at which time some of it was placed in the property room....

*Id.*

On February 18, 1992, the CAB held a hearing on the abovementioned charge. The Conduct Report states:

> On the above date and approximately 4:00 PM a letter was received by one Jamie Doolin. The letter described in detail how Jamie Doolin could traffic narcotics with inmate Leslie A. Smith # 13598. The letter was sent to Jamie Doolin by Leslie A. Smith thus constituting attempted trafficking.

*See Return to Order to Show Cause* Appendix A.

The petitioner maintains that he was never allowed to view the letter described in the Conduct Report. Additionally, in response to the abovementioned charge, the petitioner explains that he hired an attorney by the name of Robert E. Saint. Although guidance and assistance through an exchange of correspondence is acceptable, the applicable CAB rules and regulations prohibit any participation by counsel in the actual hearing. The exhibits to the petitioner's *pro se* briefs illustrate that Mr. Smith contacted certain individuals at the Indiana State Prison, namely Evelyn Ridley and Frank Love.[2] Apparently, Mr. Saint requested that he be allowed to view the aforementioned letter and the prison officials allowed counsel to look at the letter from a distance. This is the extent of the analysis allowed by the prison officials. The petitioner maintains, however, that he was never personally allowed to view the letter at issue at any time before or during the CAB proceeding.

This petitioner is apparently under the misapprehension that prisoners at CAB proceedings are entitled to a full panoply of constitutional rights and focuses extensively on the Fourth, Fifth, and Sixth Amendment protections. This is certainly not the case. Additionally, the petitioner has literally alleged every possible constitutional violation that could occur during a CAB hearing, however, many of the petitioner's claims lack merit. In section I of this decision, the court discussed the petitioner's other CAB hearing. In that section, this court extensively detailed the constitutional due process protections for a CAB proceeding and need not repeat that discussion. This court has reviewed the record in light of the rather extensive discussion of the due process protections in claims of this ilk in the previous section of this opinion, and this court is concerned about two of the issues presented in this petition. First, this court will ascertain whether the CAB violated the petitioner's due process rights by not allowing him to view or read the aforementioned letter. Next, this court will evaluate whether the petitioner's lengthy pre-hearing segregation

2. This court notes that while a prisoner precluded by prison regulations from having counsel at a CAB proceeding, there is no such preclusion for an action pursuant to § 2254.

was disciplinary in nature, thereby violating well-established due process rights.

Recently, in *Rasheed–Bey v. Duckworth,* 969 F.2d 357 (7th Cir.1992), the Seventh Circuit, speaking through Judge Eschbach, evaluated a situation of this ilk. In *Rasheed–Bey,* the CAB found the inmate-plaintiff guilty in a money order-mail fraud scheme. In pursuing his § 1983 action, the plaintiff in *Rasheed–Bey* alleged "that his hearing before the CAB was constitutionally deficient because the contents of [a certain file were] not disclosed to him." *Id.* The plaintiff argued that the nondisclosure "prevented him from presenting a meaningful defense at the hearing." *Id.* "The defendants asserted that [the plaintiff] received all the process he was due at the CAB hearing." *Id.*

In evaluating this claim, the *Rasheed–Bey* court began by revisiting the due process requirements for a CAB hearing. In reviewing the due process requirements, the *Rasheed–Bey* court evaluated the issue of barring an inmate's access to the contents of the a certain file, even though said file was considered by the CAB:

> [The plaintiff's] principal objection to his hearing is that he did not receive the contents of [a certain file.] He mistakenly equates this nondisclosure with not being provided any of the facts upon which his charges were based. *See Dawson v. Smith,* 719 F.2d 896 (7th Cir.1983) (prisoner must have notice of facts on which charges are based so he can prepare a defense). As noted above, however, [the plaintiff] was notified of the underlying factual bases of his charges through the conduct and investigative reports so that he could prepare a defense to those charges. Furthermore, prison regulation provided [the plaintiff] an opportunity to request a further summary of ... [the] investigation, but he did not make that request even though he testified that he was familiar with and had access to the policy manual.... Finally, the district court concluded that [the plaintiff] was not entitled to the contents of [the abovementioned] confidential file ... because the information therein was not exculpatory

and because the information was sufficiently reliable. *See Mendoza,* 779 F.2d at 1293. Our own review of the record in this case provides abundant support for the district court's findings on these related issues. As the district court noted, the file's contents were not patently exculpatory because the evidence (other letters with [the plaintiff's] name on them regarding altered money orders) was more likely to hurt [the plaintiff's] case than to help it. Moreover, we are assured of the reliability of the information on which the CAB relied by the CAB's in camera review of the file, by the report it received from [the investigator] regarding the money order investigation, and generally by the nature and extent of the relationship between postal authorities and prison officials in this ongoing money order investigation. We conclude that the process ISP used it impose disciplinary segregation against [the plaintiff] satisfied the requirements of the Due Process Clause of the Fourteenth Amendment.

*Id.* The situation explored by the CAB here in this action certainly echoes the abovementioned scenario described in *Rasheed–Bey.*

In this petition for a writ of habeas corpus, the petitioner points to a Third Circuit decision entitled *Young v. Kann,* 926 F.2d 1396 (3rd Cir.1991). In *Kann,* the plaintiff was "charged with making threats of bodily harm to another inmate and refusing a cell assignment." *Id.* at 1398. "The prison incident report stated that [the plaintiff] had physically and verbally threatened his cellmate when a guard attempted to return him to their cell." *Id.* "Prior to this incident, the report claimed, [the plaintiff] had given to the guard a letter that also contained threats against this cellmate." *Id.* During the prison disciplinary hearing, the plaintiff explained that the letter had been confiscated by prison officials. More importantly, the plaintiff explained that if he were allowed to present the letter at the hearing, that letter would prove to be exculpatory. Apparently, the prison disciplinary board did not have a copy of the letter, and after excusing the plaintiff from the hearing, "called the reporting officer into the hearing room and questioned him concerning the letter's contents." *Id.* After the

hearing, the prison disciplinary board informed the plaintiff that the letter was not relevant. "[The plaintiff] reasserted that the letter contained no threats and informed [the board] that he was not prepared to proceed unless the letter was produced." *Id.* The prison disciplinary board found the plaintiff guilty and the case eventually arrived in the Third Circuit Court of Appeals on the basis of the plaintiff's assertion that the abovementioned scenario violated his due process rights.

In discussing the abovementioned due process claim in *Kann*, the Third Circuit, speaking through Judge Becker, thoroughly and cogently explained the analysis involved in evaluating a claim of this nature, and an extensive quotation therefrom is in order:

> Based upon the factual allegations in [the plaintiff's] complaint, there do not appear to be any security reasons for denying [the plaintiff's] request to produce his letter. Nor has [the prison disciplinary board] proffered any such reasons. The security issues that concerned the *Wolff* Court were the risk of death or injury to inmate witnesses and informants identified at hearings or in produced documents, as well as the potential for breakdown in authority, order and discipline inside the institution.[3] None of these concerns appear to be implicated in the instant case because no witnesses were involved and no informants would be revealed by the production of the letter that Young admits having written.

This court heretofore has not been called upon to apply the requirements of *Wolff* to determine the extent of a prisoner's right to produce and view documentary evidence at a disciplinary hearing. We are aided in our analysis by three district court decisions. In *Giano v. Sullivan*, 709 F.Supp.

1209, 1213 (S.D.N.Y.1989), a prison employee assigned to assist a prisoner failed to produce certain investigative reports requested by the prisoner. The hearing officer ignored the prisoner's requests for the production of these reports, saying that he did not have them with him, and continued with the hearing despite the prisoner's repeated protests that he was not prepared to proceed. *Id.* Not having the reports, the hearing officer relied instead upon the testimony of the investigating officer and a corrections officer. *Id.* at 1211. The court found that the reason proffered by the prison for withholding the reports from the inmate, the protection of witness identity, was not supported by the record. *Id.* at 1216. The court thus held that the prisoner was "unconstitutionally denied his right to marshal evidence and present a defense to the disciplinary charges against him." *Id.*

Like the prisoner in *Giano*, [the plaintiff] claims that he twice attempted to convince [the prison disciplinary board] to delay or postpone the hearing so that his letter, which had been confiscated by the authorities, could be produced. Unlike the prisoner in *Giano*, however, [the plaintiff] was not allowed to be present during the testimony of the investigating officer, a fact which, if true, further deprived him of the ability to marshal a defense.

In *Muhammad v. Butler*, 655 F.Supp. 1470 (D.N.J.1987), a prison investigator was informed of an inmate's planned escape during a telephone call from the inmate's former lover. *Id.* at 1471. At a subsequent disciplinary hearing, the prisoner was not allowed to hear a tape recording or even to see a transcript of the call. *Id.* The court found that the security reasons proffered by the prison for denying the inmate's access to this evidence

---

**3.** In support of this holding, the *Kann* court quoted extensively from the Supreme Court decision in *Wolff.* The *Kann* court specifically noted:
The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and

the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.
*Id.* at 1399 n. 8. (quoting *Wolff*, 418 U.S. at 562, 94 S.Ct. at 2978).

were "unpersuasive." *Id.* The *Muhammad* court held that the contention made by the hearing officer—that so long as the alleged contents of the telephone conversation were conveyed to the prisoner, an actual transcript or recording of the call need not be presented to him—did not pass constitutional muster, and that the prisoner's "right to present a defense was clearly abridged by his inability to review these statements." *Id.* at 1472.

Although the district court here concluded that "[since] defendant[s] had a summary of [the plaintiff's] letter in the Incident Report and a statement from the reporting officer ... there was no need for the letter to be produced at the first hearing," we agree with the *Muhammad* court that this approach does not satisfy the requirements of due process. Furthermore, we disagree with the possible argument that, even if [the plaintiff's] due process rights were violated by [the prison disciplinary board's] refusal to order production of the letter, such a violation is without consequence since [the plaintiff] admits writing the letter, should have remembered its contents, and could thus effectively defend against the guard's testimony. Such an argument ignores [the plaintiff's] claims that he did not know the guard's specific testimony and that, without the document, he did all that he could to support his assertions: deny the guard's claim that the letter contained threatening statements.

Finally, in *McIntosh v. Carter*, 578 F.Supp. 96 (W.D.Ky.1983), prison authorities were informed by another inmate of a note allegedly written by prisoner McIntosh asking the informer to help smuggle drugs into the prison. *Id.* at 97. After obtaining a handwriting sample from McIntosh's cell, a prison investigating officer concluded in his report that the drug smuggling note was written by McIntosh. *Id.* At McIntosh's disciplinary hearing, the committee apparently did not have the drug smuggling note, but instead relied solely on the investigator's report. *Id.* at 98. The prison authorities claimed that

the note need not be produced at the hearing because only its contents and the handwriting comparison proving McIntosh's authorship were relevant to the charges against him, both of which were summarized in the investigator's report. *Id.* The court, however, held that the hearing officer had violated McIntosh's due process rights by refusing to allow him to see the note he allegedly had written. *Id.* at 99. Absent a valid security reason, the court maintained "McIntosh should be entitled to view the evidence against him." *Id.*

Although the prisoner in *McIntosh* had a greater need to "view the evidence against him" due to the potential for fabrication of incriminating evidence by hostile fellow inmates, we find the holding in that case to be directly applicable to [the plaintiff's] situation. Like the hearing officer in McIntosh, [the prison disciplinary board] appears to have relied upon the investigator's portrayal of the letter, denying [the plaintiff's] ... opportunity to prepare a defense based upon its actual contents.

We find these cases persuasive and elect to follow them. Assuming that [the plaintiff's] factual allegations are true and that [the prison disciplinary board] cannot demonstrate a valid security reason on remand, we believe that [the board's] refusal to order production of [the plaintiff's] letter at the disciplinary hearing violated [the plaintiff's] due process.

*Id.* at 1400–02.

This court is troubled by the CAB procedures at issue here on several levels. The most recent opinion from the Seventh Circuit on this issue is *Rasheed–Bey, supra.* This court finds that *Kann* may very well mark the judicial parameters of the *Rasheed–Bey* decision. Although the applications in *Rasheed–Bey* and *Kann* lead to different results, the reasoning outlined in both opinions suggest one result in the situation at issue here.

This court finds the holding in *Kann* very persuasive. This court notes that the disciplinary hearings in *Kann* and here involved a situation where prisoners were denied access to a letter which was the centerpiece of the alleged disciplinary action. In *Kann*, the letter at issue was exculpatory in nature.

Here, there is no assertion that the letter is exculpatory. Yet the letter here seems to be the sole evidence considered by the CAB and in many ways an inculpatory letter of this nature may be more prone to protection under the due process analysis. Here, as in *Kann*, this court notes that there does not appear to be any security reasons for denying the petitioner's request to produce his letter and the CAB has not proffered any such reasons. "The security issues that concerned the *Wolff* Court were the risk of death or injury to inmate witnesses and informants identified at hearings or in produced documents, as well as the potential for breakdown in authority, order and discipline inside the institution." *Id.* This court finds that the enunciations in *Kann* are all applicable here. More importantly, the fact that the letter was the centerpiece of the CAB hearing presents an arguably more compelling reason for providing that letter to the petitioner.

In *Rasheed–Bey*, the court explained that the CAB is required to give the prisoner notice of the charge and the underlying facts precipitating the charge; however, as outlined above, the *Rasheed–Bey* court did not require the CAB to disclose the contents of a certain confidential file. The *Rasheed–Bey* court explained that "[i]f such information is to remain confidential, it must be supported by some indication of reliability." *Rasheed–Bey, supra* (citing *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir.1985), *cert. denied,* 476 U.S. 1142 [106 S.Ct. 2251, 90 L.Ed.2d 697] (1986). To assure the reliability, the CAB in *Rasheed–Bey* conducted an *in camera review of the file. The record here contains no indication of such a process. The other concern of the court in Rasheed–Bey* is whether the confidential material is exculpatory in nature. Here, it is arguable that if the petitioner has access to the letter, exculpatory facts could be culled from that letter. Therefore, it appears as if the policies at work in *Rasheed–Bey* are unresolved and must not remain so in order to comport with due process.

It is important to note that the operative policies in *Rasheed–Bey* are also integral to the judicial review of the due process ramifications of CAB use of confidential informants. In *Wells v. Israel,* 854 F.2d 995 (7th Cir.1988), the Seventh Circuit dealt extensively with the due process requirements and ramifications for the consideration of confidential informants. In *Wells,* the CAB is required to review the information *in camera* at ensure reliability and to review the information for exculpatory value. This court dealt with these issues in *Carter v. Duckworth,* 739 F.Supp. 1259 (N.D.Ind.1989), and this court is very familiar with the requisite judicial values. Again, the operative function of the judicial review as explained in both *Wells* and *Rasheed–Bey* is to resolve the issue of reliability and to ascertain whether any of the confidential materials are exculpatory in nature. Often when this issue is presented through the use of a confidential informant, the CAB will not allow an inmate to view any documentary evidence in order to protect the confidential source. In order to consider this information, courts require the CAB to view or hear the evidence *in camera.* The *in camera* submission must document with specificity the CAB's basis for concluding that the confidential information was indeed reliable in the particular case under investigation, and it must show that the conclusion was reasonable.

This court finds that the CAB violated the petitioner's due process rights by not allowing him to view the abovementioned letter. Initially, this court notes the operative policies at work in both *Kann* and *Rasheed–Bey* inure to the benefit of the petitioner here. In *Kann,* the court based its decision predominately on the requisite policy considerations of a prison facility. The *Kann* court explained that providing the letter to the petitioner did not compromise the security of the prison facility nor the need for order and discipline. The *Rasheed–Bey* court discussed certain practical elements that go into the due process mix for cases of this ilk and based its decision on the need for reliability and the need to supply an inmate with any exculpatory information. Again, this court finds all of these factors inure to the benefit of the petitioner here.

It is also important to note that when the CAB assures the reliability of *any* considered evidence in order comport with due process, the CAB also makes it possible for a court to conduct the requisite judicial review mandated by the United States Supreme Court and 28 U.S.C. § 2254. In fact, it is manifest that the CAB provide the court with some way to review a finding of reliability. The consideration of confidential materials and the need for a reliability finding welds the procedural considerations outlined in *Wolff, supra,* with the substantive considerations outlined in *Hill, supra.* Here, this court initially evaluated the procedural concerns of issue in this petition and focused on the due process ramifications of denying the petitioner access to the abovementioned evidence. Without any discussion of reliability by the CAB and the accompanying rather short Conduct Report issued by the CAB, the court finds that the issue begins to transform, and in so doing, also becomes a question of whether the evidence is sufficient for purposes of due process. Again, insofar as the Conduct Report contains a dearth of information, this court finds an arguable problem centered on the sufficiency of the evidence.

In order to protect due process rights in the context of a prison disciplinary proceedings, the Supreme Court in *Supt., Mass. Corr. Institution at Walpole,* outlined and explained the requisite standards for evaluating the proceedings:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require the examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* [472 U.S.] at 455–56 [105 S.Ct. at 2774–75] (citations omitted).

This court finds that the CAB's written findings fail to pass constitutional muster under *Hill.* This court is very familiar with the published opinions from the Seventh Circuit that elaborate on *Hill.* In *Culbert v. Young,* 834 F.2d 624 (7th Cir.1987), the Seventh Circuit, speaking through Judge Ripple, summarized the due process notion by indicating that "the kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides." *Id.* In *Saenz v. Young,* 811 F.2d 1172 (7th Cir.1987), the court, speaking through Judge Posner, indicated that "[a] prison disciplinary committee is required to give a brief statement of the evidentiary basis for its decision to administer discipline, so that a reviewing court, ... can determine whether the evidence before the committee was adequate to support its findings concerning the nature and gravity of the prisoner's misconduct." *Id.* at 1174. In discussing the ramifications of this issue, the *Saenz* court explained that "[w]here the charge is complex and the committee fails to explain its findings, the reviewing court will find it difficult and maybe impossible to determine whether the committee on the one hand found facts showing that the prisoner really was guilty of the charge, or on the other hand based the finding of guilty on erroneous legal premises." *Id.* Finally, the *Saenz* court indicated the abovementioned procedure "is instrumental to the goal of making sure that prisoners are not subjected through sloppy procedures to an undue risk of being disciplined for things they have not actually done." *Id.* Certainly, an application of both *Culbert* and *Saenz* cast a pall on the CAB decision at issue here, and therefore, this court must find that the CAB has denied the petitioner his due process rights.

In considering this issue, this court is cognizant of the fact that the requirements imposed by the due process clause are "flexible and variable dependent on the situation being examined" and are "shaped by the consequences which will follow their adoption." *Bell v. Wolfish,* 441 U.S. 520, 560 [99 S.Ct.

1861, 1885, 60 L.Ed.2d 447] (1979). In evaluating claims of this ilk, there is "wide-ranging deference in the adoption and execution of policies and practice that in their judgement are needed to preserve internal order and discipline and to maintain institutional safety." *Id.* While this court is very cognizant of the important considerations, this court is reminded of the language in *Ponte v. Real* 471 U.S. 491 [105 S.Ct. 2192, 85 L.Ed.2d 553] (1985). In *Ponte,* the Court explained that the CAB may be required to explain a decision on the issue of allowing an inmate to present witnesses at the CAB hearing. This explanation should occur at either the disciplinary hearing or in a subsequent court proceeding. Although the procedures at issue here and in *Ponte* are different, the Court in *Ponte* made it clear that due process considerations are manifest:

> [T]o hold that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched for the denial of that right, either in the disciplinary proceeding itself or if that proceeding be later challenged in court, would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board. We think our holding in *Wolff* meant something more than that.

*Ponte,* 471 U.S. at 498 [105 S.Ct. at 2197.] This court finds that this case begins to represent a situation on the border of "conferring ... unreviewable discretion [to] the disciplinary board." *Id.*

Therefore, this court finds this CAB hearing lacking under both *Wolff* and *Hill.* This court believes that the most appropriate remedy in light of the entire discussion on this issue is to remand the case to the CAB for a new hearing. This hearing should comply with all of the abovementioned due process requirements and conduct another hearing consistent with the findings in this opinion.

Another issue raised by this petitioner is worthy of special mention. This court is concerned about the petitioner's lengthy pre-hearing segregation. Initially, in revisiting those due process rights, this court notes the analysis in *Woods v. Thieret,* 903 F.2d 1080 (7th Cir.1990). In *Woods,* the Seventh Circuit, explained the requisite evaluation:

> The fourteenth amendment prohibits a state from depriving a person of life, liberty or property without due process of law. *U.S. Const. amend. XIV.* While the due process clause does not itself create a liberty interest in remaining in the general population and out of temporary confinement, *see Hewitt v. Helms,* 459 U.S. 460, 467–68, 74 L.Ed.2d 675, 103 S.Ct. 864 [869–70] (1983); ... state law may create enforceable liberty interests in the prison setting. *See Kentucky Dep't of Corrections v. Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). Thus, in deciding whether ... [the] right to due process was violated, we must first look to ... [the applicable] statutes and administrative regulations to determine whether they have created a protected liberty interest. If they have, then we must determine what process is due ... before prison officials may deprive him of that interest. *Id.* at 459, 109 S.Ct. at 1908.

Although "state statutes may create liberty interests that are entitled to the procedural protections of [the due process clause]," *Vitek v. Jones,* 445 U.S. 480, 487, 63 L.Ed.2d 552, 100 S.Ct. 1254 [1260] (1980), "[the] adoption of mere procedural guidelines ... does not give rise to a liberty interest." *Culbert v. Young,* 834 F.2d 624, 628 (7th Cir.1987), *cert. denied,* 485 U.S. 990, 99 L.Ed.2d 506, 108 S.Ct. 1296 (1988). "To create a constitutionally protected liberty interest, a state must employ 'language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed ... and that [the challenged action] will not occur absent specific substantive predicates.'" *Russ v. Young,* 895 F.2d 1149, 1153 (7th Cir.1990) (quoting *Hewitt,* 459 U.S. at 471–72 [103 S.Ct. at 871–72].] "In other words, a liberty interest is created only where the state regulation in question contains 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particu-

lar outcome must follow...." *Id.* (quoting *Kentucky Dep't of Corrections,* 490 U.S. at 463, 109 S.Ct. at 1910). *Id.* at 1082–83.

It is not entirely clear to this court whether or not the petitioner's segregation was disciplinary in nature, thereby violating well-established due process rights, or whether it was administrative. The briefs here do not present enough of the facts requisite for a decision and under other circumstances, this court would likely have to hold a hearing on the issue. This court certainly has spent a considerable amount of time on the procedural due process ramifications of this issue. This court dealt specifically with that subject in *Shropshire v. Duckworth,* 654 F.Supp. 369 (N.D.Ind.1987).[4]

This court specifically notes the Seventh Circuit decisions in *Smith v. Shettle,* 946 F.2d 1250 (7th Cir.1991) and *Gilbert v. Frazier,* 931 F.2d 1581 (7th Cir.1991). Both opinions were authored by Judge Posner and deal specifically with the requisite considerations and ramifications of both administrative and disciplinary segregation. In *Smith v. Shettle,* Judge Posner specifically deals with the issue of administrative segregation in for purposes of the Indiana State Prison system. Both the petitioner and the Indiana Attorney General should begin any discussion of the abovementioned issue if this court must revisit this claim.

This court has carefully reviewed this record and finds that the petitioner's due process rights under the Constitution of the United States were violated by the CAB proceedings at issue here. This court remands the case to the CAB of the Indiana State Prison for further proceedings consistent with this opinion. This court will not resolve the issue concerning the petitioner's pre-hearing segregation until the CAB has held another hearing and issued a finding based on said hearing. The segregation issue could evolve depending on the result of the aforementioned hearing. There is a strong possibility that the claim may become moot. **IT IS SO ORDERED.**

**DATED:** July 22, 1993

/s/ Allen Sharp
ALLEN SHARP
Chief Judge
United States District Court

---

4. This court also covered similar subjects in *Smith v. Shettle,* 690 F.Supp. 746 (N.D.Ind. 1988), and in *Sulie v. Duckworth,* 583 F.Supp. 995 (N.D.Ind.1984), *aff'd,* 767 F.2d 924 (7th Cir. 1988). *See also Sulie v. Duckworth,* 864 F.2d 1348 (7th Cir.1988), *cert. denied,* 493 U.S. 828, 110 S.Ct. 93 [107 L.Ed.2d 58] (1989).